**PUBLISH**

**February 13, 2020**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ANDREW J. JOHNSON,

      Plaintiff-Appellant,

v.

ALAN W. SPENCER,

      Defendant-Appellee.

------------------------------

ROCKY MOUNTAIN INNOCENCE
CENTER,

      Amicus Curiae.

No. 17-8089

---

ANDREW J. JOHNSON,

      Plaintiff-Appellant,

v.

CITY OF CHEYENNE, a
governmental entity; DON PIERSON,
Chief of Police for the Cheyenne
Police Department; BILL STANFORD,
Cheyenne Police Detective, a/k/a
George W. Stanford; CHEYENNE
POLICE DEPARTMENT,

      Defendants-Appellees.

No. 17-8090

\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-

ROCKY MOUNTAIN INNOCENCE
CENTER,

     Amicus Curiae.

ANDREW J. JOHNSON,

     Plaintiff-Appellant,

v.                                                    No. 17-8091

CITY OF CHEYENNE, a municipal
corporation; DOE 1, the personal
representative of the decedent's estate
of George W. Stanford, an individual;
ALAN W. SPENCER, an individual;
DOES 2–20, inclusive,

     Defendants-Appellees.

\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-

ROCKY MOUNTAIN INNOCENCE
CENTER,

     Amicus Curiae.

**Appeals from the United States District Court
for the District of Wyoming
(D.C. No. 2:92-CV-00183-SWS)
(D.C. No. 2:91-CV-00129-SWS)
(D.C. No. 2:17-CV-00074-SWS)**

2

Robert P. Schuster, Robert P. Schuster P.C., Jackson, Wyoming (Bradley L. Booke, Robert P. Schuster P.C., Jackson, Wyoming, and Thomas N. Long and Aaron J. Lyttle, Long Reimer Winegar Beppler LLP, Cheyenne, Wyoming, and Laurence O. Masson, Law Office of Laurence O. Masson, Berkeley, California, with him on the briefs), for Plaintiff-Appellant.

Justin A. Daraie, Senior Assistant Attorney General (Peter K. Michael, Attorney General, Daniel E. White, Deputy Attorney General, and Philip M. Donoho, Assistant Attorney General, with him on the brief), Office of the Attorney General for the State of Wyoming, Cheyenne, Wyoming, for Defendants-Appellees, Alan W. Spencer and George W. Stanford.

Norman Ray Giles, Lewis Brisbois Bisgaard & Smith, LLP, Houston, Texas, (William S. Helfand, Lewis Brisbois Bisgaard & Smith, LLP, Houston, Texas, and J. Mark Stewart, Davis & Cannon, LLP, Cheyenne, Wyoming, with him on the brief), for Defendant-Appellee, City of Cheyenne.

Elliot H. Scherker, Greenberg Traurig, P.A., Miami, Florida, filed an amicus curiae brief for the Rocky Mountain Innocence Center in support of Plaintiff-Appellant.

Before **HOLMES**, **McKAY**, and **CARSON**, Circuit Judges.

**HOLMES**, Circuit Judge.

In 2013, a Wyoming court declared Andrew Johnson actually innocent of crimes for which he was then incarcerated. In 2017, after his release, Mr. Johnson brought suit under 42 U.S.C. § 1983 against the City of Cheyenne, Wyoming ("Cheyenne"), the Estate of Detective George Stanford ("the Estate"),[1] and Officer

---

[1] Detective Stanford died while Mr. Johnson was incarcerated. Aplt.'s App., Vol. I, at 17 (Compl., filed Apr. 17, 2017). The caption for one of these appeals, No. 17-8090, nonetheless still lists Detective Stanford as a defendant-appellee. Before

Alan Spencer alleging that they were responsible for violations of his constitutional rights that contributed to his conviction ("2017 Action"). While incarcerated, however, Mr. Johnson had unsuccessfully brought similar suits against Cheyenne and Detective Stanford in 1991 ("1991 Action") and against Officer Spencer in 1992 ("1992 Action"). The central question on appeal is what effect the judgments against Mr. Johnson in his 1991 and 1992 Actions have on his 2017 Action.

Answering this question requires us to resolve two primary issues. First, in addition to filing the 2017 Action, Mr. Johnson moved the district court under Federal Rule of Civil Procedure 60(b) for relief from the judgments in the 1991 and 1992 Actions. The district court denied Mr. Johnson's motions, and he asks us to hold that the district court thereby erred. We conclude that the district court erred in particular in denying him Rule 60(b)(6) relief, and so we vacate the orders entered by the district court and remand for it to reconsider under the correct legal rubric Mr. Johnson's requests for Rule 60(b)(6) relief. We recognize, however, that relief under Rule 60(b)(6) is discretionary; in remanding for further proceedings, we express no view on how the district court should ultimately use its discretion to resolve Mr. Johnson's Rule 60(b)(6) motions.

filing his notice of appeal in that case, Mr. Johnson moved the district court to substitute the Estate as the proper defendant, but the Estate opposed the motion and the district court decided not to rule on it until we resolve this appeal. Whether the Estate should be substituted for Detective Stanford has no impact on the outcome of the appeal.

4

Second, Cheyenne, the Estate, and Officer Spencer each moved the district court under Federal Rule of Civil Procedure 12(b)(6) to dismiss the 2017 Action because its claims are precluded by the judgments in the 1991 and 1992 Actions. The district court granted those motions and denied Mr. Johnson's later motions for reconsideration of and relief from that dismissal. On appeal, Mr. Johnson argues that even if the judgments in his 1991 and 1992 Actions are valid, the dismissal of his 2017 Action was erroneous. He asks us to reverse the dismissal and allow the 2017 Action to proceed. Because our remand of Mr. Johnson's 1991 and 1992 Actions for further consideration of his motions for Rule 60(b)(6) relief does not actually grant him such relief—and the motions, themselves, do not "affect the [underlying] judgment[s'] finality or suspend [their] operation," FED. R. CIV. P. 60(c)(2)—we address the claim-preclusion issue that the defendants presented in their 12(b)(6) motions, even though we acknowledge that the district court on remand could conceivably grant Mr. Johnson Rule 60(b)(6) relief from those judgments. And we affirm in part and reverse in part the district court's dismissal of the 2017 Action. More specifically, we affirm the dismissal of the claims against Cheyenne and the Estate because the judgment in the 1991 Action—in which they were the defendants—is entitled to claim-preclusive effect. We reverse, however, the dismissal of the claims against Officer Spencer because the judgment in the 1992 Action—in which he was the defendant—was *not* on the merits and,

5

thus, is not entitled to claim-preclusive effect.

In the following discussion, we set forth the background underlying this appeal, address the Rule 60(b) arguments pertinent to the 1991 and 1992 Actions, address the Rule 12(b)(6) arguments pertinent to the 2017 Action, and conclude by briefly addressing an outstanding motion relating to the record on appeal (which we deny as moot).

## I. BACKGROUND

### A. Factual Background[2]

Late one night in June 1989, Mr. Johnson ran into a female acquaintance at a bar in Cheyenne and returned with her to the apartment that she shared with her boyfriend, who was away at the time. They drank wine and smoked marijuana in her living room, and Mr. Johnson used his driver's license and picture I.D., which were enclosed in a clear plastic sleeve, to separate marijuana leaves from their stems and seeds for the joints that they smoked. Mr. Johnson and his female acquaintance then left her apartment in her car and visited multiple bars in downtown Cheyenne. Mr. Johnson, however, forgot his license and picture I.D. on the coffee table in his acquaintance's living room.

The acquaintance eventually became sick and vomited in her car while Mr.

---

[2]     Except where noted, we take the following factual allegations from Mr. Johnson's complaint in his 2017 Action.

Johnson was driving them to an after-hours club. When Mr. Johnson went inside the club to get some paper towels to clean up her vomit, the acquaintance climbed into the driver's seat and drove herself home. Mr. Johnson returned to find that his acquaintance and her car were gone. He then walked to his home, thirty-five minutes away, and went to sleep.

Later that night, from around 3:00 a.m. to 3:10 a.m., the acquaintance's downstairs neighbor heard aggressively loud, periodic knocking on the door to the stairs leading to the acquaintance's upstairs apartment. Eventually, she heard the door's glass window pane shatter, followed by footsteps crossing the broken glass and walking upstairs to the acquaintance's apartment. The neighbor heard the intruder walking around the acquaintance's apartment and then a woman screaming what sounded like "No, no!" The neighbor immediately called the police. While the neighbor was speaking to the police dispatcher, she heard the intruder walk back down the stairs, over the broken glass, and out of the building, less than ten minutes after breaking into the upstairs apartment.

When Officer Spencer and Officer Phillip Raybuck of the Cheyenne Police Department arrived about a minute later, they found the acquaintance whimpering hysterically in her bathroom with the door ajar. The rest of the apartment was dark. Officer Spencer later testified at trial that, when they asked the acquaintance to come out of the bathroom, she screamed at them, and it took him a moment to

7

realize that she was repeatedly asking, "Is he still here?"  The officers searched her apartment and found no one else.  They told her that they were the only ones there and she could open the bathroom door.  Officer Spencer testified that the acquaintance opened the door some more—revealing that her hair was mussed, her eyes were wet and red, and her robe was half undone—and she repeatedly said, "He hurt me."

According to Mr. Johnson, Officer Spencer must have taken his driver's license and picture I.D. off of the coffee table in the living room and, upon being told by the acquaintance that a man had "hurt" her, showed them to her, "prompting" her "to affirmatively assert Mr. Johnson was that man."  Officer Spencer testified that it took him a while to understand what Mr. Johnson allegedly did to the acquaintance because she was still choked up and crying, but that she ultimately led him to believe that Mr. Johnson had sexually assaulted her.

Officer Spencer took the acquaintance to a local hospital where she was medically examined and had a sexual-assault kit performed, resulting in the discovery of seminal fluid.  Officer Raybuck then went through the acquaintance's apartment taking photographs of the crime scene.  Some of these photographs were provided to Mr. Johnson's trial counsel, but others were not.

Later that morning, Mr. Johnson was awakened by a police officer knocking on his front door.  The officer asked him if he had any knowledge about a burglary

and sexual assault that had happened during the night. Mr. Johnson denied having any knowledge of the crimes. The officer then arrested him and took him to jail.

Detective Stanford investigated the acquaintance's sexual-assault allegation. He took biological samples from Mr. Johnson pursuant to a warrant and interviewed the acquaintance at least three times. At trial, he testified that the acquaintance called him two days after the sexual assault and told him that she had found Mr. Johnson's eyeglasses in her bedroom—the same eyeglasses, she said, that he had worn at the bars they went to after leaving her apartment on the night she was assaulted. Mr. Johnson claims that his glasses must have been "planted" in the bedroom "by or on behalf of" the acquaintance.

At trial, the acquaintance testified that Mr. Johnson broke into her apartment and raped her. She also testified that Mr. Johnson had his I.D. card when they went barhopping after leaving her apartment because he produced his card to enter one of the bars. The prosecution, as mentioned, introduced testimony from Officer Spencer and Detective Stanford about the driver's license, picture I.D., and eyeglasses that were found in the apartment. An expert witness for the prosecution testified that, based on forensic testing, Mr. Johnson was "among the five percent [of the population] who could have left the seminal fluid" recovered by the acquaintance's sexual-assault kit. *Johnson v. State*, 806 P.2d 1282, 1288 (Wyo. 1991). The jury convicted Mr. Johnson of aggravated burglary and first degree

sexual assault. *Id.* at 1283. The Supreme Court of Wyoming affirmed his conviction. *Id.* at 1291.

Mr. Johnson remained imprisoned for twenty-four years. Then, in August 2013, he was declared actually innocent by a Wyoming court after improved DNA testing revealed that the seminal fluid samples in the acquaintance's sexual-assault kit did not match his DNA but, rather, the DNA of the acquaintance's then-boyfriend. According to Mr. Johnson, the Cheyenne Police Department should not have believed the acquaintance and her boyfriend when they told the police that the boyfriend was out of town for work on the night she was sexually assaulted.

## B.   Procedural Background

### 1.   The 1991 Action

While incarcerated, Mr. Johnson filed at least two federal civil-rights actions in Wyoming federal district court against those he claimed were responsible for his conviction. The first of these actions was a suit he filed *in forma pauperis* in 1991 against the City of Cheyenne and Detective Stanford, among other parties. Within seven days of the filing of his original complaint, Mr. Johnson also filed a demand for a jury trial. He then amended his complaint, alleging, *inter alia*, that Cheyenne had failed to train its officers in proper methods of investigation and that Detective Stanford had violated his constitutional rights during the investigation by, for example, the manner in which the detective interrogated him.

10

About a month after the defendants answered his amended complaint, Mr. Johnson requested a hearing on the complaint and a jury trial. The district court granted him an evidentiary hearing, but denied him a jury trial. At the hearing, Mr. Johnson objected to the court's denial of a jury trial, but his objection was overruled. Near the end of the hearing, the defendants argued that the case was ripe for summary judgment, and the district court responded that they could move for it. The district court also ordered the parties to submit proposed findings of fact and conclusions of law. But before the district court entered any findings or conclusions, the case was transferred to another district judge, who, in turn, referred the case to a magistrate judge for a new evidentiary hearing. Mr. Johnson, however, did not object to the new hearing. And it appears that he did not renew his request for a jury trial before the new district judge.

At the beginning of the new evidentiary hearing, the magistrate judge denied the defendants' motions for summary judgment, which they had filed after the first evidentiary hearing, because there were genuine disputes of material fact. The magistrate judge indicated that he would be making the relevant findings of fact based on the evidence proffered at the hearing, and Mr. Johnson, again, did not object. The magistrate judge then conducted a bench trial and issued Findings of Fact and Recommendations, advising in the end "[t]hat [Mr. Johnson's] complaint be denied with prejudice." Aplt.'s App., Vol. IV, at 834 (Findings of Fact and

11

Recommendations on Evidentiary Hr'g, filed Oct. 2, 1992); *see id.*, Vol. V, at 1170 (Tr. of Evidentiary Hr'g Proceedings, dated Aug. 11, 1992) (the magistrate judge explaining to the parties that "[t]his is a trial"). Mr. Johnson filed objections to the magistrate judge's report. The district court overruled his objections and adopted the magistrate judge's recommendations, dismissing Mr. Johnson's claims with prejudice.

Mr. Johnson appealed, and a panel of our court entered an order and judgment affirming the district court's judgment. *Johnson v. City of Cheyenne* (*Johnson I*), No. 92-8079, 1993 WL 335802, at *4 (10th Cir. Aug. 26, 1993) (unpublished). Importantly, we noted that "[n]one of the parties objected to the procedure followed [i.e., the district court's referral of the matter to the magistrate judge and the magistrate judge's holding of an evidentiary hearing concerning the complaint and his subsequent issuance of proposed findings of fact and a recommendation that the complaint be denied on the merits], and it is not raised as an issue on appeal." *Id.* at *1 n.4.

### 2. The 1992 Action

While his 1991 Action was pending, Mr. Johnson filed another federal civil-rights action—this time a 42 U.S.C. § 1983 suit against Officer Spencer. Mr. Johnson alleged that Officer Spencer had violated his due-process rights "by knowingly and willfully giv[ing] false testimony at [his original] jury trial" about

the eyeglasses that his acquaintance said that he had worn and she had found in her bedroom. Aplt.'s App., Vol. VI, at 1240 (Civil Rights Compl., filed Aug. 18, 1992). He also moved the district court for leave to proceed *in forma pauperis*.

Before Officer Spencer filed any responsive document, the district court entered an order sua sponte dismissing the complaint with prejudice as frivolous. The court noted that in the 1991 Action it had "concluded there were no facts justifying the plaintiff's claims that his constitutional rights were violated" with respect to the trial evidence about his eyeglasses, and that "[t]he present complaint [wa]s simply another attempt by [him] to revisit the same claim that ha[d] previously been dismissed." *Id.* at 1257–58 (Order Dismissing Civil Rights Pet., filed July 20, 1993). The court reviewed the exhibits submitted with the complaint and determined that they did not "establish[] even the slightest indication that [Officer Spencer had] made false, or inconsistent[,] statements at the trial." *Id.* at 1258. The court held that "Plaintiff ha[d] made no new argument in his complaint and [that the] complaint [wa]s frivolous and completely devoid of merit." *Id.* (citing 28 U.S.C. § 1915(d) (1993)). The court then went on to hold that, "[e]ven assuming [Mr. Johnson's] constitutional rights were violated by" Officer Spencer, any error was "harmless" in light of the strong evidence of guilt presented at Mr. Johnson's trial. *Id.* at 1258–59. The court described "the evidence and [Officer Spencer's challenged] testimony regarding the eyeglasses" as, "at best, extraneous

13

and cumulative." *Id.* at 1259. It then "dismissed [the complaint] with prejudice as frivolous." *Id.*

On appeal, we affirmed, noting that the district court had "dismiss[ed] the action as factually frivolous under 28 U.S.C. § 1915(d)." *Johnson v. Spencer* (*Johnson II*), No. 93-8036, 1994 WL 249805, at *1 (10th Cir. June 6, 1994) (unpublished). In doing so, we stated that "Mr. Johnson's lawsuit is based upon an indisputably meritless legal theory because a testifying police officer is entitled to absolute immunity." *Id.* (citation omitted). Thus, "[d]ismissal was appropriate." *Id.*

### 3. The 2017 Action

After he was exonerated, Mr. Johnson filed a third federal civil-rights action, i.e., the 2017 Action under § 1983. He alleged that Cheyenne, Detective Stanford, Officer Spencer, and unnamed members of Cheyenne's police department violated his constitutional rights. In particular, he alleged that the defendants suppressed photographs of the crime scene that would have exonerated him, failed to preserve those photographs, fabricated evidence by prompting the acquaintance to identify him as the intruder who broke into her apartment, and, as to Cheyenne, failed to have adequate policies and training for its officers.

In May 2017, Cheyenne and Officer Spencer separately moved to dismiss the complaint, arguing, *inter alia*, that the claims against them were precluded by the

14

judgments in the 1991 and 1992 Actions, respectively. The Estate later filed its own motion to dismiss, raising, *inter alia*, claim preclusion with respect to the 1991 Action. The defendants each attached records from the prior proceedings to their motions.

In July 2017, the district court granted all three motions to dismiss. *Johnson v. City of Cheyenne*, No. 2:17-CV-00074-SWS, 2017 WL 6551394, at \*9 (D. Wyo. July 27, 2017). "Although Defendants . . . raised several bases for dismissal of Plaintiff's claims against them," the district court concluded that "res judicata, or claim preclusion, bar[red] Plaintiff's . . . action and [wa]s therefore dispositive of Defendants' motions to dismiss." *Id.* at \*5. In particular, the district court concluded that both the 1991 and 1992 Actions had resulted in final judgments on the merits against Mr. Johnson, had been between the same parties as the 2017 Action, and had concerned the same transaction as the 2017 Action. The district court rejected Mr. Johnson's argument that *Heck v. Humphrey,* 512 U.S. 477 (1994)—which held that prisoners may not bring a § 1983 action that calls into question the lawfulness of their conviction until the conviction has been invalidated—implied that the judgments against him in his 1991 and 1992 pre-*Heck* Actions were not entitled to claim-preclusive effect because his underlying conviction had not yet been invalidated. *Id.* at \*7–8 (citing *Heck*). Although Mr. Johnson had yet to respond to the Estate's motion to dismiss, the court granted it,

15

too, "because the res judicata analysis d[id] not differ and [wa]s equally dispositive as to Detective Stanford." *Id.* at *9 n.13.

### 4. Mr. Johnson's Motions for Relief from All Three Judgments

On August 1, 2017, Mr. Johnson filed in the district-court dockets for his 1991, 1992, and 2017 Actions identical motions to set aside the judgments in those three cases pursuant to Rule 60. Later that month, he also filed a motion to alter or amend the judgment in the 2017 Action under Rule 59. The district court denied all of the motions. *Johnson v. City of Cheyenne*, No. 2:17-CV-00074-SWS, 2017 WL 6551397 (D. Wyo. Nov. 21, 2017); *Johnson v. City of Cheyenne*, Nos. 2:17-CV-00074-SWS, 2:91-CV-00129-SWS & 2:92-CV-00183-SWS, 2017 WL 6551395 (D. Wyo. Nov. 14, 2017). In its orders denying the motions, the district court rejected Mr. Johnson's arguments that the judgments in the 1991 and 1992 Actions were void or should otherwise be set aside, *see* 2017 WL 6551395, at *5–8, as well as his additional arguments against the application of claim preclusion, *see* 2017 WL 6551397, at *4–5.

Mr. Johnson timely appealed from the dismissal of his 2017 Action and the denial of his motions in all three actions for post-judgment relief. He notified the district court of the materials he thought the clerk of court should forward to us as the record on appeal. The defendants objected to the inclusion of some of the materials on the ground that the district court had not considered them in reaching

16

its rulings. The district court agreed that Mr. Johnson had included in his notice "various documents and transcripts" from his 1991 and 1992 Actions that were still in storage at the Federal Records Center and the National Archives and, thus, "were not presented to or considered by [the court] in making its rulings." Aplt.'s App., Vol. VII, at 1395 (Order Regarding R. on Appeal, filed Jan. 17, 2018). The district court nonetheless held that those records "[could] properly be included in the record on appeal." *Id.* Mr. Johnson then filed a letter in this court asking the clerk's office for guidance on how to include the archived records in his appendix. The clerk's office construed his letter as a motion to supplement the record with documents not before the district court, and the letter (so construed) was referred to the merits panel (i.e., this panel) for resolution.

## II. DISCUSSION

The central question in this appeal is whether the judgments in the prior litigation concerning Mr. Johnson's conviction—i.e., the judgments in the 1991 and 1992 Actions—prevent him from bringing a new lawsuit—i.e., the 2017 Action—against the same defendants after his exoneration. The answer turns on the doctrine of claim preclusion.[3] Claim preclusion "prevent[s] a party from litigating

---

[3] "For purposes of clarity this court employs the term[] 'claim preclusion' instead of 'res judicata.'" *Wilkes v. Wyo. Dep't of Emp't*, 314 F.3d 501, 504 n.1 (10th Cir. 2002). We nonetheless recognize that legal authorities, including some quoted or cited herein, also use the latter term.

17

a legal claim that was or could have been the subject of a previously issued final judgment." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239 (10th Cir. 2017) (quoting *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005)).  For claim preclusion to apply, "three elements must exist: (1) a [final] judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits."  *Id.* (alteration in original) (quoting *King v. Union Oil Co. of Cal.*, 117 F.3d 443, 445 (10th Cir. 1997)).  "[E]ven if these three elements are satisfied, there is an exception to the application of claim preclusion where the party resisting it did not have a 'full and fair opportunity to litigate' the claim in the prior action."  *Id.* (quoting *MACTEC*, 427 F.3d at 831 & n.6).

In Part A, we discuss Mr. Johnson's attempt to set aside the judgments in his 1991 and 1992 Actions under Federal Rule of Civil Procedure 60(b).  If he were successful in doing so, there would be no prior judgments to preclude his 2017 Action; therefore, claim preclusion would not apply.  We conclude that the district court erred when it applied the wrong legal standard in denying Mr. Johnson Rule 60(b)(6) relief from the judgments in the 1991 and 1992 Actions.  We, thus, vacate and remand for further proceedings consistent with this opinion.  We do not, however, grant him Rule 60(b)(6) relief, nor do we express any view concerning whether the district court should use its discretion on remand to grant his Rule

18

60(b)(6) motions.

Because the judgments in the 1991 and 1992 Actions are not disturbed by our Rule 60(b)(6) ruling and, thus, remain in effect, we address in Part B whether those judgments have claim-preclusive effect on the 2017 Action. We conclude that the judgment in the 1991 Action—in which Detective Stanford and Cheyenne were defendants—has claim-preclusive effect. But we conclude that the judgment in the 1992 Action—in which Officer Spencer was the defendant—does not have claim-preclusive effect because that case was not decided "on the merits." We, thus, do the following: (1) reverse the district court's order granting Officer Spencer's Rule 12(b)(6) motion to dismiss the 2017 Action and remand for further proceedings, and (2) affirm the district court's order granting the Estate's and Cheyenne's Rule 12(b)(6) motions to dismiss the 2017 Action.

In Part C, we address Mr. Johnson's outstanding motion to supplement the record on appeal. We conclude that the motion is moot in light of the district court's order allowing Mr. Johnson to include the relevant documents in the record.

## A.     Mr. Johnson's Rule 60(b) Motions in the 1991 and 1992 Actions

Federal Rule of Civil Procedure 60(b) "provides an 'exception to finality' that 'allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances.'" *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269–70 (2010) (citation omitted) (quoting *Gonzalez v.*

19

*Crosby*, 545 U.S. 524, 528–29 (2005)).  Mr. Johnson's motions under that rule

sought relief from the final judgments in his 1991 and 1992 Actions under both

Rule 60(b)(4) and Rule 60(b)(6).  Rule 60(b)(4) states that the court must relieve a

party from a judgment if "the judgment is void."  FED. R. CIV. P. 60(b)(4).  Rule

60(b)(6) provides courts with the authority to relieve parties from a judgment for

any "reason that justifies relief."  FED. R. CIV. P. 60(b)(6).[4]  The district court

denied Mr. Johnson's motions for Rule 60(b) relief under both provisions.

We now examine whether the district court erred in doing so.  Because relief

---

[4]    In full, Rule 60(b) provides:

**(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.**  On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

**(1)** mistake, inadvertence, surprise, or excusable neglect;

**(2)** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

**(3)** fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

**(4)** the judgment is void;

**(5)** the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

**(6)** any other reason that justifies relief.

FED R. CIV. P. 60(b).

20

under Rule 60(b)(4) is mandatory, we first address Mr. Johnson's arguments that the challenged judgments are "void." We ultimately uphold the district court's rejection of those arguments. Next, we address his Rule 60(b)(6) arguments, concluding that the district court's rejection of those arguments rested on two legal errors. But relief under Rule 60(b)(6) is discretionary, and, thus, it would be—at the very least—imprudent for us to endeavor to resolve Mr. Johnson's Rule 60(b)(6) motions in the first instance. We, therefore, vacate the district court's orders denying those motions and—without expressing any view about the appropriate outcome—remand for further proceedings consistent with this opinion.

### 1. Rule 60(b)(4)

"Rule 60(b)(4) . . . authorizes the court to relieve a party from a final judgment if 'the judgment is void.'" *Espinosa*, 559 U.S. at 270; *accord Kile v. United States*, 915 F.3d 682, 686 (10th Cir. 2019). A judgment is void under Rule 60(b)(4) "only in the rare instance where [the] judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Espinosa*, 559 U.S. at 271. "If voidness is found, relief is not a discretionary matter; it is mandatory." *V. T. A., Inc. v. Airco, Inc.*, 597 F.2d 220, 224 n.8 (10th Cir. 1979); *accord Kile*, 915 F.3d at 686. "We review de novo the district court's ruling on a Rule 60(b)(4) motion." *Kile*, 915 F.3d at 686 (quoting *United States v. Buck*, 281 F.3d 1336, 1344 (10th

21

Cir. 2002)).

Here, Mr. Johnson makes both jurisdictional and due-process arguments for relief. Thus, in reviewing the district court's denial of Rule 60(b)(4) relief, we ask whether the judgments in the 1991 and 1992 Actions are premised "[(1)] on a certain type of jurisdictional error or [(2)] on a violation of due process that deprives a party of notice or the opportunity to be heard." *Espinosa*, 559 U.S. at 271. We conclude (a) that Mr. Johnson does not establish that a jurisdictional error occurred and (b) that he has waived any due-process argument he might have had. We, thus, affirm the district court's denial of Rule 60(b)(4) relief.

> ### a. The district court properly rejected Mr. Johnson's Rule 60(b)(4) motions because, *inter alia*, the court had an "arguable basis" to exercise jurisdiction in the 1991 and 1992 Actions.

Mr. Johnson argues that both the 1991 and 1992 Actions were premised on jurisdictional errors. More specifically, he argues that *Heck v. Humphrey*, which the Supreme Court decided in 1994 after the district court entered judgment in both the 1991 and 1992 Actions, demonstrates that the district court had no jurisdiction to enter those judgments. He says that we should now recognize that the judgments were void *ab initio*. This argument relies on multiple shaky premises. And we conclude, among other things, that the district court had at least an "arguable basis" to exercise jurisdiction over both actions. *See Espinosa*, 559 U.S. at 271. We, thus, agree with the district court's rejection of Mr. Johnson's jurisdictional

22

arguments for Rule 60(b)(4) relief.

In *Heck*, the Supreme Court held that § 1983 plaintiffs alleging "unconstitutional conviction or imprisonment," or "other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, . . . must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486–87. The Court stated that "[a] claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is *not* cognizable under § 1983." *Id.* at 487 (second emphasis added). Relying on that statement, we have said that "[w]hen a § 1983 claim is dismissed under *Heck*," i.e., because the plaintiff's conviction has not yet been overturned or otherwise invalidated, "the dismissal should be without prejudice." *Fottler v. United States*, 73 F.3d 1064, 1065 (10th Cir. 1996). Mr. Johnson, thus, argues that because his conviction was not yet invalidated when he filed his 1991 and 1992 Actions, the district court did not have jurisdiction to entertain those suits; accordingly, the court should have dismissed them *without* prejudice. We reject Mr. Johnson's *Heck*-based argument.

We must first determine whether *Heck* and its interpretation of § 1983 even apply to the district court's judgment in the 1991 Action, considering that the

23

judgment became final before *Heck* was decided. While it is true that "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction," *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312–13 (1994), that does not mean that *Heck*'s interpretation of § 1983 must apply retroactively to void earlier final judgments. After all, "retroactivity in civil cases must be limited by the need for finality; once suit is barred by res judicata or by statutes of limitation or repose, a new rule cannot reopen the door already closed." *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 541 (1991) (plurality opinion of Souter, J.) (citation omitted); *see Gray v. Phillips Petroleum Co.*, 971 F.2d 591, 596 (10th Cir. 1992) (recognizing Justice Souter's opinion "as controlling"); *see also Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758 (1995) ("New legal principles, even when applied retroactively, do not apply to cases already closed."); *Teague v. Lane*, 489 U.S. 288, 308 (1989) (plurality opinion) ("[I]t has long been established that a final civil judgment entered under a given rule of law may withstand subsequent judicial change in that rule."); *cf. Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1221 (10th Cir. 1996) ("[W]hen the Court applies a rule of law to litigants in the case before it, the rule applies 'with respect to all others *not barred by procedural requirements or res judicata*.'" (emphasis added) (quoting *James B. Beam Distilling*, 501 U.S. at 544)).

24

The claim-preclusion consequences of a final judgment are, in other words, not "altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *see also* Aaron-Andrew P. Bruhl, *Deciding When to Decide: How Appellate Procedure Distributes the Costs of Legal Change*, 96 CORNELL L. REV. 203, 211–12 (2011) ("A final judgment is no less final because it is wrong, whether it was always wrong or just newly wrong. Although Rule 60 of the Federal Rules of Civil Procedure permits reopening of final judgments in certain circumstances, the mere incorrectness of a prior judgment in light of new legal developments is ordinarily not enough."). So even though *Heck changed* our understanding of which claims are cognizable under § 1983, it did nothing to disturb civil judgments entered under a prior understanding of the statute—at least where those judgments, like the one in the 1991 Action, were undisputedly final when *Heck* was decided. Therefore, on finality grounds alone, we may reject Mr. Johnson's invocation of *Heck* as to the judgment in the 1991 Action. As we will see, however, there is another rationale that leads to the same outcome—a rationale that applies not only to the 1991 Action, but also to the 1992 Action: specifically, Mr. Johnson is not entitled to Rule 60(b)(4) relief from either judgment because the district court acted with at least "arguable jurisdiction" in entering them.

Reasoning that the judgment in the 1992 Action was still "open on direct

25

review"[5] when the Supreme Court decided *Heck*, Mr. Johnson argues that *Heck* at least applies to that judgment. *See Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993) ("When [the Supreme] Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and *must be given full retroactive effect in all cases still open on direct review* . . . ." (emphasis added)). More specifically, he argues that the district court erred in not sua sponte seeking out an exception to the mandate rule after we affirmed its dismissals, even though none of the parties drew the court's attention to *Heck*. However, even if the district court erred in not considering the impact of *Heck* on its judgment in the 1992 Action, we conclude that any error would still not provide Mr. Johnson with a

---

[5]     The parties dispute whether Mr. Johnson is correct that the 1992 Action was "open on direct review" when *Heck* was decided. The Supreme Court decided *Heck* on June 24, 1994—after we issued our opinion in the 1992 Action on June 6, 1994, but before our mandate issued and Mr. Johnson's time to file a petition for certiorari expired. *Compare* FED. R. APP. P. 41(c) advisory committee's note to 1998 amendment ("A court of appeals' judgment or order is not final until issuance of the mandate; at that time the parties' obligations become fixed."), *with Bradley v. Sch. Bd.*, 416 U.S. 696, 711 n.14 (1974) ("By final judgment we mean one where 'the availability of appeal' has been exhausted or has lapsed, and the time to petition for certiorari has passed." (quoting *Linkletter v. Walker*, 381 U.S. 618, 622 n.5 (1965))), *and* Bruhl, *supra*, at 211 ("[O]ur system typically draws the line [for finality] at the conclusion of the direct appellate process, which occurs when the period for filing a petition for certiorari expires . . . ."). *Cf.* 18A Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 4432, Westlaw (database updated Aug. 2019) ("[I]t is clear that definitions of finality cannot automatically be carried over from appeals cases to preclusion problems."). We need not resolve this dispute, however. As explained *infra*, even assuming the 1992 Action was still open on direct review when *Heck* was decided, Rule 60(b)(4) relief remains unavailable.

basis for Rule 60(b)(4) relief.

"Federal courts considering Rule 60(b)(4) motions that assert a judgment is void because of a jurisdictional defect generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction." *Espinosa*, 559 U.S. at 271; *accord Gschwind v. Cessna Aircraft Co.*, 232 F.3d 1342, 1346 (10th Cir. 2000) ("There must be 'no arguable basis on which [the court] could have rested a finding that it had jurisdiction.'" (alteration in original) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986))); *Baella-Silva v. Hulsey*, 454 F.3d 5, 9–10 (1st Cir. 2006) ("[I]f the record supports an 'arguable basis' for concluding that subject-matter jurisdiction existed, a final judgment cannot be collaterally attacked as void." (quoting *Fafel v. DiPaola*, 399 F.3d 403, 411 (1st Cir. 2005))); *cf.* 18A Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 4427, Westlaw (database updated Aug. 2019) ("For the most part, a judgment entered by a federal court acting beyond its subject-matter jurisdiction remains eligible for res judicata effects if there is no other defect . . . .").

In the 1992 Action—as in the 1991 Action—the district court had at least an "arguable basis" for jurisdiction for two main reasons. First, it is arguable whether *Heck*'s limitation on § 1983 suits is jurisdictional. We have indicated—albeit in dicta in a precedential decision and in unpublished cases—that *Heck* is *not*

27

jurisdictional. *Jiron v. City of Lakewood*, 392 F.3d 410, 413 n.1 (10th Cir. 2004); *accord Coppinger v. Zavaras*, 429 F. App'x 755, 756 n.1 (10th Cir. 2011) (unpublished) (stating that *Jiron* had "not[ed] *Heck* is not jurisdictional and proceed[ed] to evaluate the merits of the *Heck*-barred claims"); *Marshall v. Morton*, 421 F. App'x 832, 836 n.4 (10th Cir. 2011) (unpublished) (similar); *Orvis v. Pleasant Grove City*, 200 F. App'x 730, 732 n.1 (10th Cir. 2006) (unpublished) (similar); *see Polzin v. Gage*, 636 F.3d 834, 837 (7th Cir. 2011) (per curiam) ("The *Heck* doctrine is not a jurisdictional bar."). And if *Heck* is not jurisdictional, the district court would not have been obliged to assess sua sponte *Heck*'s impact on the judgment in the 1992 Action (nor would we for that matter); rather, the defendants would have needed to raise *Heck* as a defense, and the record shows no sign that they did. *Cf. Carr v. O'Leary*, 167 F.3d 1124, 1126 (7th Cir. 1999) ("The failure to plead the *Heck* defense in timely fashion was a waiver . . . .").

Second, even if *Heck* were jurisdictional, the district court at most would have erred in discerning the applicability of its jurisdictional requirement to Mr. Johnson's § 1983 actions. But that is an insufficient basis for Rule 60(b)(4) relief. As we have stated, "an erroneous interpretation of a jurisdictional statute does not render the underlying judgment void." *Gschwind*, 232 F.3d at 1346; *see Jones v. Giles*, 741 F.2d 245, 248 (9th Cir. 1984) ("An error in interpreting a statutory grant of jurisdiction is not . . . equivalent to acting with total want of jurisdiction and

does not render the judgment a complete nullity."); *Kan. City S. Ry. Co. v. Great Lakes Carbon Corp.*, 624 F.2d 822, 825 (8th Cir. 1980) (en banc) ("[E]rror in interpreting a statutory grant of jurisdiction is not equivalent to acting with total want of jurisdiction.  Such an erroneous interpretation does not render the judgment a complete nullity.").

In sum, because the judgment in the 1991 Action was final by the time that *Heck* was decided, nothing about *Heck*'s changed understanding of § 1983 rendered the judgment in that action void; consequently, the district court properly rejected Mr. Johnson's request for Rule 60(b)(4) relief on finality grounds alone. Moreover, putting aside the question of finality, the district court still properly denied him such relief in both the 1991 and 1992 Actions.  Even if the district court's exercise of jurisdiction constituted error under *Heck*, it certainly was not the sort of "plain usurpation of power" that would have rendered the judgments entered in those actions void.  *Gschwind*, 232 F.3d at 1346 (quoting *Kan. City S. Ry. Co.*, 624 F.2d at 825).  The district court had at least an "arguable basis" to exercise jurisdiction over both the 1991 and 1992 Actions; consequently, we have no trouble rejecting Mr. Johnson's jurisdictional argument for Rule 60(b)(4) relief.

### b.    Mr. Johnson waived his argument that the 1991 Action is void because of a due-process violation

Mr. Johnson also argues that the judgment in the 1991 Action is void

29

because it is based on a violation of due process.[6]  In particular, he argues that the adjudication of the 1991 Action denied him his right to a jury trial.  Even assuming that such a due-process argument is cognizable under Rule 60(b)(4), we conclude that Mr. Johnson waived it by abandoning it in his direct appeal of the 1991 Action.

As summarized above, Mr. Johnson requested a jury trial in the 1991 Action, but his request was denied.  Mr. Johnson appealed from the resulting judgment, but did not contest the procedure the district court had used in reaching it, *see Johnson I*, 1993 WL 335802, at *1 n.4 ("None of the parties objected to the procedure followed, and it is not raised as an issue on appeal."), and we affirmed the dismissal.  Mr. Johnson now argues that the procedure the district court used in the 1991 Action violated his due-process rights.  We conclude, however, that his failure to present that argument in his direct appeal "precludes him"—as the Estate succinctly says—"from now setting aside the finality of the resultant judgment[] under the auspices of [Rule] 60(b)(4)."  Officer Aplees.' Resp. Br. at 37.

The Supreme Court has recognized that even "[t]he most basic rights . . . [are] subject to waiver." *Peretz v. United States*, 501 U.S. 923, 936 (1991).  Here, Mr. Johnson litigated his due-process concerns before the district court in the 1991

---

[6]  Mr. Johnson disclaims any due-process argument that the judgment in the 1992 Action is void.  *See* Aplt.'s Opening Br. at 50 n.17.

30

Action but—be it through strategy or neglect—failed to raise them on appeal. Because he failed to do so, any subsequent arguments that he advances based on those concerns are properly deemed waived. *See United States v. Gama-Bastidas*, 222 F.3d 779, 784 (10th Cir. 2000) (noting that "[o]rdinarily, we will not review in a second direct appeal an issue that underlies a previously affirmed conviction" and that this "general rule" is based in part on the law-of-the-case doctrine under which "findings made at one point during litigation become law of the case for subsequent stages of that same litigation" (quoting *United States v. Webb*, 98 F.3d 585, 587 (10th Cir. 1996))); *see also United States v. Sacko*, 247 F.3d 21, 24 (1st Cir. 2001) (ruling that, although the defendant "had every incentive to do so, [he] failed to present [an] argument in his first appeal" and, thus, "cannot raise it here for the first time" because "he may not revive in the second round an issue he allowed to die in the first" (quoting *United States v. Ticchiarelli*, 171 F.3d 24, 32 (1st Cir. 1999))); *United States v. Russ*, 861 F.2d 184, 185 (8th Cir. 1988) (per curiam) (noting that "[t]he parties frame their arguments in terms of the proper application of the law-of-the-case doctrine," and holding that the appellant "should have raised th[e] issue [of the amount of the deficiency judgment] in his appeal from the initial district court order finding him liable for the amount stated in the complaint, and his failure to do so precludes further consideration of this claim"); *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 250 (D.C. Cir. 1987)

31

("Under law of the case doctrine, a legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time. The doctrine encompasses a court's explicit decisions, as well as those issues decided by necessary implication." (citations omitted)).

Mr. Johnson's waiver of his due-process concerns about the 1991 Action precludes him from receiving Rule 60(b)(4) relief on that basis now. As the Supreme Court has stated, "a motion under Rule 60(b)(4) is not a substitute for a timely appeal," *Espinosa*, 559 U.S. at 270, and "Rule 60(b)(4) does not provide a license for litigants to sleep on their rights," *id.* at 275; *see Lebahn v. Owens*, 813 F.3d 1300, 1306 (10th Cir. 2016) ("[A] Rule 60(b) motion is not an appropriate vehicle to advance new arguments or supporting facts that were available but not raised at the time of the original argument."). Here, it is beyond cavil that Mr. Johnson's due-process arguments were available but not raised in his appeal from the judgment entered in the 1991 Action; after all, he raised the arguments before the district court in that action.

We, thus, conclude that Mr. Johnson's failure to raise his objections to the district court's bench-trial procedure in the 1991 Action on direct appeal resulted in waiver of his present argument that the resulting judgment is void under Rule

32

60(b)(4) because it is based on a violation of due process.

*** 

We recognize that some of the appellees argue that this should mark the end of our Rule 60 analysis. They contend that because "the provisions of Rule 60 are mutually exclusive" and Mr. Johnson's arguments under Rule 60(b)(4) and Rule 60(b)(6) overlap, Mr. Johnson "must either succeed on his Rule 60(b)(4) argument, or fail entirely." Officer Aplees.' Resp. Br. at 35; *see id.* ("Because Johnson urges this Court to consider his request for relief under subsection (b)(4), the Court cannot consider his arguments under Rule 60(b)(6)."). We disagree.

To be sure, there is authority for the proposition that "clause (6) and clauses (1) through (5) are mutually exclusive." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 n.11 (1988); *see O'Dell v. Sun Ref. & Mktg. Co.*, No. 99-5048, 2000 WL 339181, at *5 (10th Cir. Mar. 31, 2000) (unpublished) ("Relief under 60(b)(6) is only appropriate when none of the first five clauses of the rule are applicable."). And we have said that "[a] Rule 60(b)(6) motion may not be used as a vehicle to re-allege 60(b)(4) allegations." *Spitznas v. Boone*, 464 F.3d 1213, 1225 n.11 (10th Cir. 2006). But that does not mean that failing to succeed under clause (4) necessarily dooms *every* argument advanced under clause (6). The failure of arguments under Rule 60(b)(4) does not tell us, for example, whether different arguments may entitle the party to relief under Rule 60(b)(6). *Cf. id.* at 1225

33

(directing district court to consider on remand whether a party, "not entitled to relief under Rule 60(b)(4), is [nonetheless] entitled to relief under Rule 60(b)(6)"). And while some of Mr. Johnson's Rule 60(b)(4) and Rule 60(b)(6) arguments are related, he raises distinct arguments under the latter clause. *Cf. Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1293 (10th Cir. 2005) ("Parties moving for relief under Rule 60(b) cannot simply throw in subsection (6) without any new arguments and expect to obtain a new trial."); *Bros. Inc. v. W. E. Grace Mfg. Co.*, 320 F.2d 594, 609 (5th Cir. 1963) ("While the circumstances reflected by all of these papers bear many of the earmarks of a mere plea for reopening for newly discovered evidence under (2) or fraud under (3), it is something more," namely, an invocation of "60(b)(6)."). We, thus, consider Mr. Johnson's request for Rule 60(b)(6) relief.

### 2.    Rule 60(b)(6)

Mr. Johnson argues that the district court made several legal errors in denying him Rule 60(b)(6) relief. We agree that the district court made at least two salient errors in denying such relief, and so we remand for the district court to exercise its discretion in a manner consistent with this opinion. In the following discussion, we (a) set out the standards governing Rule 60(b)(6) relief, (b) reject the district court's premise that Rule 60(b)(6) relief is available only in equitable proceedings, (c) reject the district court's conclusion that Mr. Johnson's filing of prior lawsuits barred Rule 60(b)(6) relief, and (d) decline to address Mr. Johnson's

34

remaining arguments because they would draw us into reviewing matters that we leave to the district court in the first instance.

### a. Standards Governing Rule 60(b)(6) Relief

Rule 60(b)(6) allows federal courts to relieve a party from a judgment for any reason—other than those in the five enumerated preceding categories—"that justifies relief." FED. R. CIV. P. 60(b)(6). "We have described Rule 60(b)(6) as a 'grand reservoir of equitable power to do justice in a particular case.'" *Kile*, 915 F.3d at 687 (quoting *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 579 (10th Cir. 1996)). Although "the rule should be liberally construed when substantial justice will thus be served," *McGraw v. Barnhart*, 450 F.3d 493, 505 (10th Cir. 2006) (quoting *Pierce v. Cook & Co.*, 518 F.2d 720, 722 (10th Cir. 1975) (en banc)), "relief under Rule 60(b)(6) is extraordinary and reserved for exceptional circumstances," *id.*

"We review the district court's decision to deny a Rule 60(b)(6) motion for an abuse of discretion." *Kile*, 915 F.3d at 688. "The denial of a 60(b)(6) motion will be reversed only if we find a complete absence of a reasonable basis and are certain that the decision is wrong." *Davis v. Kan. Dep't of Corr.*, 507 F.3d 1246, 1248 (10th Cir. 2007) (quoting *Zurich N. Am.*, 426 F.3d at 1293). The abuse-of-discretion standard, however, "does not shelter a district court that makes an error of law, because '[a] district court would necessarily abuse its discretion if it based

35

its ruling on an erroneous view of the law.'" *McLane Co. v. EEOC*, 581 U.S. ___, 137 S. Ct. 1159, 1168 n.3 (2017) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)); *see Ungar v. Palestine Liberation Org.*, 599 F.3d 79, 86 (1st Cir. 2010) (concluding that a district court's legally erroneous "application of a categorical rule [about when exceptional circumstances obtain under Rule 60(b)(6)] was a per se abuse of discretion"). Thus, even in the context of the deferential abuse-of-discretion standard, we review subsidiary legal questions de novo. *See Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 699 (10th Cir. 1998) (noting that in the "context" of the abuse-of-discretion standard, we still "review *de novo* purely legal questions"); *see also United States v. Dixon*, 901 F.3d 1170, 1176 n.2 (10th Cir. 2018) ("[E]ven under a deferential abuse-of-discretion standard, in the instructional context, erroneous conclusions of law are *effectively* subject to de novo review in any event."); Harry T. Edwards & Linda A. Elliott, FEDERAL STANDARDS OF REVIEW Ch. V.A, Westlaw (database updated Feb. 2018) ("[T]he variety of matters committed to the discretion of district judges means that the [abuse-of-discretion] standard is necessarily variable. It implies no single level of scrutiny by the appellate courts.").

We focus our analysis on two salient legal errors Mr. Johnson has identified in the district court's Rule 60(b)(6) analysis.

36

### b.      Rule 60(b)(6) relief extends to all civil actions generally.

The district court abused its discretion by denying Mr. Johnson's motions for

Rule 60(b)(6) relief based on a legally erroneous view of the difference between

law and equity.  We reverse its denial of Rule 60(b)(6) relief and remand for the

district court to exercise the full and proper breadth of its discretion.

In support of his argument before the district court for Rule 60(b)(6) relief,

Mr. Johnson cited multiple cases for the proposition that actual innocence can

present an extraordinary circumstance justifying relief.  Some of the cases involved

habeas corpus proceedings.  In distinguishing those cases, the district court stated:

> Habeas corpus proceedings are equitable in nature, while § 1983
> claims for damages are inherently not.  Thus, while it may be
> appropriate for a court in equity to avoid *res judicata* to do justice,
> such arguments are unavailing in the § 1983 context.

Aplt.'s App., Vol. III, at 646 (Order Den. Pl.'s Rule 60 Mots., filed Nov. 14, 2017)

(citations omitted).  On appeal, Mr. Johnson argues that this is an erroneous view

of the law and that the district court abused its discretion by basing its decision on

this rationale.  We agree.

Neither the Federal Rules of Civil Procedure, nor our cases, recognize the

district court's proffered law-equity distinction.  The language of Rule 60(b)(6) is

broad: it allows the district court to grant relief for "any other reason that justifies

relief."  FED. R. CIV. P. 60(b)(6).  We see no basis for the district court's law-

equity distinction on the Rule's face, and the court offered none.  And, while there

37

was a time when the distinction between law and equity was crucial, "[t]he merger of law [and] equity . . . is complete." FED. R. CIV. P. 1 advisory committee's note to 2007 amendment; *see SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. ___, 137 S. Ct. 954, 960 (2017) (noting that "the separate systems of law and equity were merged in 1938"). Thus, the Federal Rules of Civil Procedure apply to "all civil actions and proceedings in the United States district courts," except as stated in a rule not relevant here. FED. R. CIV. P. 1; *see* FED. R. CIV. P. 2 ("There is one form of action—the civil action."); FED. R. CIV. P. 2 advisory committee's note to 1937 adoption (note 2) ("Reference to actions at law or suits in equity in all statutes should now be treated as referring to the civil action prescribed in these rules.").

And so it is unsurprising that our cases demonstrate that Rule 60(b)(6) relief is not limited to proceedings that are "equitable in nature." Aplt.'s App., Vol. III, at 646. For example, in *McGraw v. Barnhart*, we stated that counsel would be able to use a Rule 60(b)(6) motion to seek a statutory fee award. 450 F.3d at 505 ("Substantial justice will be served by allowing counsel to seek § 406(b)(1) fees under the authority of Rule 60(b)(6)."). Likewise, in *Pierce v. Cook & Co.*, our en banc court relied on Rule 60(b)(6) to set aside a judgment in a tort action. 518 F.2d at 723–24. And, analogously, we have used Rule 60(b)(1) to set aside a judgment in a § 1983 case. *See Wallace v. McManus*, 776 F.2d 915, 917 (10th Cir.

1985) (per curiam), *superseded by rule*, FED. R. APP. P. 4(a)(6) (1991). We, thus, conclude that the district court legally erred in holding that its discretion to grant Rule 60(b)(6) relief was cabined to "equitable" actions.

### c. Plaintiffs are not barred from Rule 60(b)(6) relief simply because they filed the lawsuit.

The district court's erroneous law-equity distinction was but one rationale supporting its denial of Rule 60(b)(6) relief. As relevant here, the court also reasoned that Mr. Johnson's decisions to file the 1991 and 1992 Actions were "free, calculated and deliberate choices." Aplt.'s App., Vol. III, at 647 (quoting *Cashner*, 98 F.3d at 580). And because "the broad power granted by [Rule 60(b)(6)] is not for the purpose of relieving a party from free, calculated, and deliberate choices the party has made," 11 Wright et al., *supra*, § 2864; *accord Cashner*, 98 F.3d at 580, the court reasoned that Rule 60(b)(6) relief is improper in this case. Aplt.'s App., Vol. III, at 647. We disagree.

We do not believe that the mere act of having brought the lawsuit is the sort of free, calculated, and deliberate choice that precludes Rule 60(b)(6) relief from its judgment. After all, "the 'whole purpose' of Rule 60(b) 'is to make an exception to finality.'" *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 779 (2017) (quoting *Gonzalez*, 545 U.S. at 529). Indeed, were it correct that simply bringing the action disqualifies a party from later receiving Rule 60(b)(6) relief, then presumably the plaintiffs in those actions could never avail themselves of Rule

39

60(b)(6) for relief from the resulting judgments. But the plain terms of the Rule belie that notion because they provide no such limitation. Furthermore, we have previously granted Rule 60(b)(6) relief to plaintiffs. *See, e.g.*, *Pierce*, 518 F.2d at 723–24.

The sort of "free, calculated, and deliberate choices" that may undermine a party's request for Rule 60(b)(6) relief are things like settlement agreements that have not worked out for the party, *see Kile*, 915 F.3d at 688; *Cashner*, 98 F.3d at 580, or the party's regretted decision not to appeal an adverse judgment, *see Ackermann v. United States*, 340 U.S. 193, 197–98 (1950). Expressing no view on whether Mr. Johnson is entitled to Rule 60(b)(6) relief from the judgments in the 1991 and 1992 Actions, we hold that the district court legally erred in concluding that Mr. Johnson's decisions to bring the 1991 and 1992 Actions were the sort of "free, calculated, and deliberate choices" that foreclose Rule 60(b)(6) relief.

### d. Remaining Arguments

Mr. Johnson points to other purported errors in the district court's denial of Rule 60(b)(6) relief. The "different institutional competencies" of trial and appellate courts make us reluctant in this case "to construct the fact-specific balance that Rule 60(b)(6) demands." *Ungar*, 599 F.3d at 87; *see id.* ("The district court did not analyze the totality of the circumstances [in denying Rule 60(b)(6) relief] but, rather, focused on what it improvidently believed to be a categorical bar

40

to relief. Concluding, as we do, that this categorical rule does not apply in the circumstances of this case, we vacate the orders appealed from and remand for further proceedings consistent with this opinion. We take no view of the appropriate outcome."). Based on the two salient legal errors discussed herein, we vacate the district court's orders denying Rule 60(b)(6) relief. On remand, subject to the guidance we have provided, the court may take a fresh look at Mr. Johnson's arguments for Rule 60(b)(6) relief and exercise its discretion in resolving them.

\* \* \*

In sum, we affirm the district court's orders denying Rule 60(b)(4) relief, but vacate its orders denying Rule 60(b)(6) relief and remand for further proceedings. As to the latter, we underscore that we do not take any position concerning whether Mr. Johnson is entitled to Rule 60(b)(6) relief; we instead remand for the district court to use the full and proper scope of its discretion in addressing that matter. *See id.*[7]

---

[7] In his Rule 60(b) motion for relief from the judgments in the 1991 and 1992 Actions, Mr. Johnson also argued for Rule 60(b) relief from the judgment in the 2017 Action. *See* Aplt.'s App., Vol. II, at 369, 389–90 (Pl.'s Mem. in Supp. of Mot. to Set Aside Js., filed Aug. 1, 2017). But, on appeal, he does not address the district court's resolution of those arguments aside from his broader arguments about the district court's dismissal of his 2017 Action under Rule 12(b)(6), discussed *infra*. More specifically, he does not tell us what the district court did wrong in denying him Rule 60(b) relief from the judgment in the 2017 Action. We, therefore, deem any such argument abandoned and limit our discussion of the district court's Rule 60(b) rulings to the 1991 and 1992 Actions. *See, e.g.*, *Nixon v. City & Cty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015) ("The first task of an appellant is to explain to us

41

Although we remand for further proceedings on Mr. Johnson's motions for Rule 60(b)(6) relief, the underlying judgments in the 1991 and 1992 Actions are not disturbed by this ruling, and thus remain in effect. *See Lebahn*, 813 F.3d at 1305 ("[A]n appeal from denial of Rule 60(b) relief 'raises for review only the district court's order of denial and not the underlying judgment itself.'" (quoting *Stouffer v. Reynolds*, 168 F.3d 1155, 1172 (10th Cir. 1999))); FED. R. CIV. P. 60(c)(2) (noting that the filing of a Rule 60(b) motion "does not affect the judgment's finality or suspend its operation"). Therefore, we proceed to address Mr. Johnson's challenge to the district court's dismissal of the 2017 Action on the ground that it is precluded by the judgments in the 1991 and 1992 Actions. *Cf.* 18A Wright et al., *supra*, § 4432 ("Civil Rule 60(c)(2) expressly provides that a motion to vacate does not affect the finality of a judgment or suspend its operation, so preclusion should not be suspended merely because such a motion is pending.").[8]

---

why the district court's decision was wrong."); *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("An appellant's opening brief must identify 'appellant's contentions *and the reasons for them*, with citations to the authorities and *parts of the record on which the appellant relies*.'" (emphasis added) (quoting FED. R. APP. P. 28(a)(9)(A) (2007))).

[8] We recognize that if the district court uses its discretion on remand to grant Mr. Johnson relief under Rule 60(b)(6) from the judgments in the 1991 and 1992 Actions, that would undercut the court's dismissal of the 2017 Action, which was based on the preclusive effect of those judgments. *See* FED. R. CIV. P. 60(b)(5) (granting courts the authority to relieve parties from judgments "based on an earlier judgment that has been reversed or vacated"); *see also Manzanares v. City of Albuquerque*, 628 F.3d 1237, 1240 (10th Cir. 2010) ("[I]t is necessary that 'the present judgment [be] based on the prior judgment in the sense of res judicata or collateral estoppel.'" (second alteration in original) (quoting *Klein v. United States*,

**B.     The Defendants' Rule 12(b)(6) Motions in the 2017 Action**

In the following discussion, we address (1) our standard of review, (2) the general framework governing claim-preclusion, and (3) how that law applies to the 1991 and 1992 Actions.  We conclude that the district court correctly held that the 1991 Action has claim-preclusive effect on the 2017 Action, but erred in holding that the 1992 Action has such effect.  We, thus, affirm in part and reverse in part.

**1.     Standard of Review**

Generally, "[w]e review de novo the district court's grant of the [defendants'] motion to dismiss on . . . claim preclusion grounds." *Campbell v. City of Spencer*, 777 F.3d 1073, 1077 (10th Cir. 2014).  While this much is undisputed, Mr. Johnson argues that the district court erroneously converted the motions to dismiss into motions for summary judgment by considering its prior records as part of its claim-preclusion analysis.  We consider this argument at the outset because it could impact the scope and substance of our claim-preclusion analysis.  We conclude, however, that the district court could consider its prior records without converting the motions into ones for summary judgment.

Additionally, we independently address certain preservation issues latent in Mr. Johnson's appellate argument.  Although Mr. Johnson forfeited his two main challenges to the district court's Rule 12(b)(6) rulings by failing to raise them in

---

880 F.2d 250, 258 n.10 (10th Cir. 1989))).

43

that court when opposing the defendants' 12(b)(6) motions, we nevertheless conclude that Officer Spencer and the Estate have, themselves, forfeited any preservation-related argument on this point by failing to raise it in their appellate briefing. Therefore, as to those defendants, we exercise our discretion to apply the usual de novo standard in our review of Mr. Johnson's 12(b)(6) challenges. Although the question of whether Cheyenne has failed to object to Mr. Johnson's lack of preservation of these challenges is less straightforward, we assume that Mr. Johnson's arguments against Cheyenne should also be reviewed de novo, as his arguments fail in any event.

### a. Consideration of Prior Court Records

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). A district court, however, may "take judicial notice of its own files and records, as well as facts which are a matter of public record," without converting a motion to dismiss into a motion for summary judgment. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (quoting *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001) (en banc)). But we have stated that when a district court considers its own files and records in ruling on a Rule 12(b)(6) motion, "[t]he documents may

44

only be considered to show their contents, not to prove the truth of matters asserted therein." *Id.* (alteration in original) (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)).  Mr. Johnson contends that the district court here considered its own records for the truth of the matters asserted and, thus, was required to convert the defendants' motions to dismiss into motions for summary judgment.  We disagree.

The overarching concern with taking notice of judicial records for "the truth of the matter asserted" is the improper admission of hearsay.  *See* FED. R. EVID. 801(c) ("'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence *to prove the truth of the matter asserted* in the statement." (emphasis added)).  "When offered to prove the facts stated, court records are hearsay; hence, they would be admissible as evidence only if they satisfied some hearsay exception such as the official records exception."  21B Wright et al., *supra*, § 5106.4.  But this concern is inapplicable when a district court merely considers its records to determine what it did in a prior case—i.e., as evidence of prior "judicial acts."  *See id.* ("Courts can properly notice prior judicial acts for the purpose of acting upon them.").

It, thus, is unremarkable that courts frequently take judicial notice of prior judicial acts found in records and files when evaluating the merits of a purported claim-preclusion defense.  *See, e.g.*, *St. Louis Baptist Temple, Inc. v. Fed. Deposit*

45

*Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("The doctrine of judicial notice has been utilized, [s]ua sponte, when the defending party's motion for summary judgment is predicated on affirmative defenses such as [r]es judicata or collateral estoppel, as in the case at bar."); 21B Wright et al., *supra,* § 5106.4 ("The best-known example [of courts properly noticing their prior judicial acts] is the use of judicial records in ruling on a claim that the present case is barred or controlled by res judicata . . . ." (footnote omitted)).

Importantly, we and other courts have done so without transforming a defendant's motion to dismiss into a motion for summary judgment. *See Campbell*, 777 F.3d at 1080–82 (affirming the dismissal at the pleadings stage of a § 1983 claim on claim-preclusion grounds after reviewing proceedings from an earlier adjudication and determining that the plaintiff could have raised her constitutional claims in that adjudication, but did not do so); *Morgan v. City of Rawlins*, 792 F.2d 975, 979 (10th Cir. 1986) (reversing the Rule 12(b)(6) dismissal of a § 1983 action because we were "satisfied, in the light of this record[, which included filings from a prior state action], that substantive issues inherent in a § 1983 claim were not the focus of the state hearing"); *see also Ruiz v. Snohomish Cty. Pub. Util. Dist. No. 1*, 824 F.3d 1161, 1167 (9th Cir. 2016) (reviewing the record of a prior proceeding to interpret the court's "ambiguous prior judgment" for purposes of claim preclusion at the motion-to-dismiss stage); *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695

F.3d 758, 763–64 (8th Cir. 2012) (noting that "[o]ur interpretation of the phrase

'face of the complaint . . . include[s] public records and materials embraced by the

complaint,' and 'material[s] attached to the complaint'" (alterations and omission

in original) (citation omitted) (quoting *Noble Sys. Corp. v. Alorica Cent., LLC*, 543

F.3d 978, 983 (8th Cir. 2008); then quoting *Quinn v. Ocwen Fed. Bank FSB*, 470

F.3d 1240, 1244 (8th Cir. 2006) (per curiam))); *Giragosian v. Ryan*, 547 F.3d 59,

66 (1st Cir. 2008) (stating that a district court may consider documents from prior

judicial adjudications when resolving a Rule 12(b)(6) motion to dismiss on claim-

preclusion grounds); *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000)

(noting that "when entertaining a motion to dismiss on the ground of res judicata, a

court may take judicial notice of facts from a prior judicial proceeding when the res

judicata defense raises no disputed issue of fact").[9]

    To be sure, the district court—in reviewing the complaint in the 2017

Action—could not supplement the allegations in that complaint with, say, testimony

that a witness had provided in the 1991 Action.  But, for example, it was entirely

proper for the district court to review its records to determine whether it had

---

    [9]    We have also addressed this issue persuasively in an unpublished
decision.  *See Tri-State Truck Ins., Ltd. v. First Nat'l Bank of Wamego*, 564 F. App'x
345, 347 (10th Cir. 2014) (unpublished) ("Generally res judicata is an affirmative
defense to be pleaded in the defendant's answer.  However, when all relevant facts
are shown by the court's own records, of which the court takes notice, the defense
may be upheld on a Rule 12(b)(6) motion without requiring an answer." (quoting
*Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992))).

previously dismissed a claim as frivolous or on the merits. This is because the latter use of judicial notice only takes notice of judicial acts. Here, the district court relied on its records to determine what judicial acts it had taken in the 1991 and 1992 Actions, e.g., whether there was a trial on the merits, whether it had ruled on any objections to the procedures used, and what statutory provision it relied on in dismissing one of those lawsuits. This use of judicial notice accords with our practice in cases like *Campbell*, 777 F.3d at 1080–82, and does not run afoul of the restriction against taking judicial notice of court records for the truth of the matters they assert, *cf. Estate of Lockett ex rel. Lockett v. Fallin*, 841 F.3d 1098, 1111 (10th Cir. 2016) ("On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." (internal quotation marks omitted) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001))).

We, thus, reject Mr. Johnson's argument that the district court was required to convert the motions to dismiss into motions for summary judgment.

### b. Preservation Issues

Mr. Johnson's two main arguments on appeal for why the district court erred in concluding that his claims in the 2017 Action were precluded by the judgments in the 1991 and 1992 Actions were not raised in his Rule 12(b)(6) briefing before

48

the district court. His first argument concerns whether he had a "full and fair" opportunity" to litigate those claims in the 1991 Action, and the second concerns whether the 1992 Action resulted in a decision "on the merits." Neither argument was presented in Mr. Johnson's responses to the defendants' motions to dismiss. Instead, Mr. Johnson first articulated those arguments in his post-judgment motions to reconsider under Rules 59(e) and 60—which was too late. That is, he asserted the arguments too late to preserve them for an appellate challenge to the district court's Rule 12(b)(6) rulings.[10] *See, e.g., Lyons v. Jefferson Bank & Tr.*, 994 F.2d 716, 722–23 (10th Cir. 1993) (concluding that "arguments . . . [that] were not raised until a post-trial motion" were not "preserved for review" even though "the trial court addressed the merits of these arguments"); *Burnette v. Dresser Indus., Inc.*, 849 F.2d 1277, 1285 (10th Cir. 1988) (refusing to address an appellate argument that the district court declined to consider because the litigant had first raised it in a motion for reconsideration). Accordingly, for purposes of our review

---

[10]     A district court may, of course, deny Rule 59 and Rule 60 motions for reconsideration because the motions only raise arguments that could have been made earlier. *See Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019); *Servants of the Paraclete v. Doe*, 204 F.3d 1005, 1012 (10th Cir. 2000). We would review such a denial for an abuse of discretion. *Servants of the Paraclete*, 204 F.3d at 1009. Here, however, we are reviewing the district court's granting of the defendants' Rule 12(b)(6) motions, not the court's subsequent denials of Mr. Johnson's motions to reconsider that decision. Although Mr. Johnson's appeal challenges the district court's denial of his Rule 60 motions as to *the 1991 and 1992 Actions*, he raises no argument about the denial of his Rule 59(e) and 60(b) motions as to *the 2017 Action*.

49

of the district court's 12(b)(6) order, these arguments are forfeited and entitled to no more than rigorous plain-error review. *See, e.g.*, *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130–31 (10th Cir. 2011).

We nonetheless exercise our discretion to review these forfeited arguments de novo. *See Cox v. Glanz*, 800 F.3d 1231, 1244 (10th Cir. 2015) ("[T]he decision regarding what issues are appropriate to entertain on appeal in instances of lack of preservation is discretionary." (quoting *Abernathy v. Wandes*, 713 F.3d 538, 552 (10th Cir. 2013))). Officer Spencer and the Estate both forfeited the issue of Mr. Johnson's own forfeiture by failing to argue his lack of preservation in their appellate briefing. *See United States v. Rodebaugh*, 798 F.3d 1281, 1314 (10th Cir. 2015) (noting that "even if the government had somehow waived or forfeited Mr. Rodebaugh's forfeiture, we would be left with dueling 'waivers/forfeitures,'" requiring us "to decide whose waiver/forfeiture to overlook"); *Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1138–39 (10th Cir. 2010) (engaging in de novo review where the appellees "themselves failed to adequately present any . . . forfeiture argument in their appellate brief" and thereby "forfeited any forfeiture argument they may have on this issue"); *see also Niemi v. Lasshofer*, 728 F.3d 1252, 1262 (10th Cir. 2013) ("This is not to suggest that we cannot take notice on our own of a forfeiture not timely raised by the opposing party, only that nothing *compels* that course in this case."). And, although Cheyenne obliquely invokes the plain-error

standard in disputing certain of Mr. Johnson's arguments, we decline to apply that rigorous standard—insofar as Mr. Johnson's two primary 12(b)(6) arguments implicate Cheyenne—because even under a more lenient de novo review, which ordinarily applies in the 12(b)(6) context, Mr. Johnson's arguments fail.

With our de novo standard of review thus settled, we now turn to the legal principles governing the district court's adjudication of the claim-preclusion defenses.

## 2. Background Principles of Claim Preclusion

Before proceeding further into our de novo review, we pause to frame the applicable claim-preclusion doctrine. "The principle underlying the rule of claim preclusion is that a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not have another chance to do so." *Lenox MacLaren Surgical*, 847 F.3d at 1239 (quoting *Stone v. Dep't of Aviation*, 453 F.3d 1271, 1275 (10th Cir. 2006)). "The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). We require defendants to prove three elements to prevail on this defense: "(1) a [final] judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." *Lenox MacLaren Surgical*, 847 F.3d at 1239 (quoting *King*, 117 F.3d at 445). "In addition, even if these three elements are satisfied, there is an exception to the

51

application of claim preclusion where the party resisting it did not have a 'full and fair opportunity to litigate' the claim in the prior action." *Id.* (quoting *MACTEC*, 427 F.3d at 831 & n.6); *see Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481 n.22 (1982) ("While our previous expressions of the requirement of a full and fair opportunity to litigate have been in the context of collateral estoppel or issue preclusion, it is clear from what follows that invocation of res judicata or claim preclusion is subject to *the same limitation*." (emphasis added)).

Although we have at times "characterized the 'full and fair opportunity to litigate' as a fourth requirement of res judicata," we have since clarified that "the absence of a full and fair opportunity to litigate is more appropriately treated as an exception to the application of claim preclusion when the three referenced requirements are met." *MACTEC*, 427 F.3d at 831 n.6; *accord Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 n.4 (10th Cir. 1999) (citing *Kremer*, 456 U.S. at 481 n.22, for the proposition that this opportunity to litigate is a "limitation" on the application of claim preclusion).

In this case, Mr. Johnson concedes that the district court correctly ruled that the second and third elements of claim preclusion are satisfied here. *See* Aplt.'s Reply Br. at 7 n.2 (declining to "dispute that the same parties and transaction elements are satisfied"). Thus, the judgments in the 1991 and 1992 Actions will have claim-preclusive effect against Mr. Johnson so long as they were "on the

merits" and he had a "full and fair opportunity to litigate." Although Mr. Johnson argues that the 1992 Action did not provide him with a "full and fair opportunity to litigate," we do not address the merits of that argument because, as explicated below, we agree with his contention that the district court erred in holding that the judgment in that action was "on the merits." The 1992 Action, accordingly, should not have been given claim-preclusive effect. As for the 1991 Action, Mr. Johnson does not argue that the district court erred in concluding that it had entered a judgment "on the merits." Consequently, we take up below solely the question of whether Mr. Johnson had a "full and fair opportunity to litigate" his claims in the 1991 Action. *See Nixon*, 784 F.3d at 1366 (stating that an appellant who does not explain why the district court erred in its ruling waives the issue). We conclude that he did have such an opportunity. We, thus, affirm that aspect of the district court's claim-preclusion determination.

### 3. Application

In the following discussion, as indicated, we focus on whether the 1991 Action provided Mr. Johnson with a "full and fair opportunity to litigate" and whether the 1992 Action was adjudicated "on the merits." As to the 1991 Action, we conclude that Mr. Johnson had a "full and fair opportunity to litigate" his claims because the decision to conduct a bench trial that ostensibly deprived him of that opportunity presented a procedural issue that he had a full and fair opportunity

53

to litigate before the district court, but then waived on appeal, even though he could have fully and fairly litigated it there as well. As to the 1992 Action, in contrast, we conclude that Mr. Johnson correctly contends that the action was not adjudicated "on the merits" because the district court expressly dismissed it as frivolous under the then-applicable 28 U.S.C. § 1915(d). Accordingly, we affirm the district court's dismissal of the claims precluded by the 1991 Action—i.e., those against the Estate and Cheyenne—but reverse its dismissal of the claims ostensibly precluded by the 1992 Action—i.e., those against Officer Spencer.

### a. The 1991 Action is entitled to claim-preclusive effect.

The parties dispute whether the 1991 Action is entitled to claim-preclusive effect and, more specifically, whether it constituted a "full and fair opportunity to litigate." Mr. Johnson also argues that, even if the 1991 Action might give rise to claim preclusion, Cheyenne and the Estate have failed to muster legally sufficient proof to establish this.[11] We reject both arguments and, thus, uphold the district court's dismissal of the claims against Cheyenne and the Estate, i.e., the parties to the 1991 Action.[12]

---

[11] Mr. Johnson similarly argues that Officer Spencer failed to prove claim preclusion with respect to the 1992 Action. Because we conclude that the district court erred in holding that this judgment was "on the merits"—and, thus, in giving it claim-preclusive effect—we need not address that argument to resolve this appeal.

[12] Mr. Johnson does not argue that the claim-preclusive effect of the 1991 Action on the claims against the Estate is any different than it would have been on the claims against Detective Stanford, had he survived. And Mr. Johnson, as noted,

### i.    The "Full and Fair Opportunity to Litigate" Requirement

The "full and fair opportunity to litigate" inquiry is a "narrow exception" that "applies only where the requirements of due process were not afforded—where a party shows 'a deficiency that would undermine the fundamental fairness of the original proceedings.'" *Lenox MacLaren Surgical*, 847 F.3d at 1243 (citation omitted) (citing *Crocog Co. v. Reeves*, 992 F.2d 267, 270 (10th Cir. 1993); then quoting *Nwosun v. Gen. Mills Rests., Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997)). "The fairness of the prior proceeding 'is determined by examining any procedural limitations, the party's incentive to fully litigate the claim, and whether effective litigation was limited by the nature or relationship of the parties.'" *Id.* (quoting *Nwosun*, 124 F.3d at 1257–58). Here, Mr. Johnson argues, as he did in support of his request for Rule 60(b)(4) relief, that the district court's decision in the 1991 Action to convene a bench trial instead of a jury trial was a procedural limitation that denied him a "full and fair opportunity to litigate" his claims. Aplt.'s Opening Br. at 18. We disagree.

As we mentioned, the procedural limitation at issue here—i.e., the denial of a jury trial—is a matter that Mr. Johnson fully litigated before the district court in the 1991 Action and could have fully challenged on appeal, but failed to do. More

---

concedes that the "same parties" element of claim preclusion is satisfied here. *See* Aplt.'s Reply Br. at 7 n.2.

specifically, after the district court denied Mr. Johnson's motion for a jury trial and started to conduct an evidentiary hearing on his complaint instead, Mr. Johnson objected to that procedure in court. The district court overruled the objection. After his case was assigned to a new district judge, that judge entered judgment for the defendants following a bench trial held about 10 months after the evidentiary hearing. Mr. Johnson appealed from the district court's judgment. Although he could have challenged the process that the district court afforded him, he failed to do so. *See Johnson I*, 1993 WL 335802, at *1 n.4 ("None of the parties objected to the procedure followed, and it is not raised as an issue on appeal."). The judgment in the 1991 Action then became final; any procedural challenges Mr. Johnson could have raised against it were waived by his failure to present them on appeal. *See, e.g.*, *Sacko*, 247 F.3d at 24; *Gama-Bastidas*, 222 F.3d at 784.

As the governing authorities make clear, it is enough for full-and-fair-opportunity-to-litigate purposes that the litigant had a full and fair opportunity to contest the procedural obstacle that ostensibly barred meaningful consideration of his claims. Mr. Johnson had that opportunity here. In this regard, our decision in *Hanley v. Four Corners Vacation Properties, Inc.*, is instructive. *See* 480 F.2d 536 (10th Cir. 1973). In *Hanley*, the plaintiffs-appellants argued that a prior state judgment "was void and subject to collateral attack because of the lack of service of process." *Id.* at 538 (applying federal due-process principles to analyze the

claim-preclusive effect of a Colorado judgment). The defendants-appellees defended the prior judgment on the ground that "the due process issue [pertaining to the alleged defect in service of process] was fully litigated [previously] in [state court,] culminating in a judgment" against the plaintiffs-appellants. *Id.* at 537. The district court "sustained the defense," holding that the prior judgment should be accorded claim-preclusive effect. *Id.* We affirmed, stating that "[i]t is . . . well settled that where the issue of due process has been litigated and a final judgment entered, the determination of that issue, right or wrong, is res judicata." *Id.* at 538. In reaching that holding, we reasoned that the plaintiffs-appellants' due-process concerns were litigated in state court, where "[a]n adequate remedy was available through the state appellate process." *Id.* And we concluded that the plaintiffs-appellants "have had their day in court on these issues and a final judgment entered thereon. They cannot relitigate them in federal court." *Id.*

As in *Hanley*, so too here. Mr. Johnson had a full and fair opportunity to litigate the alleged procedural limitation—i.e., the denial of a jury trial—before the district court in the 1991 Action, and, after the court entered judgment, he had a full and fair opportunity to challenge the court's procedures on appeal before that judgment became final. The fact that he did not present a procedural challenge on appeal does nothing to diminish the opportunity that he had to do so; he simply lost his chance. Like the plaintiffs-appellants in *Hanley*, Mr. Johnson "had [his] day in

57

court on th[is] issue[] and a final judgment entered thereon." *Id.* The district court, therefore, properly determined that he could not "relitigate" the issue in the 2017 Action. *Id.*

Moreover, other authorities—within and without our circuit—accord with this conclusion. *See In re Griego*, 64 F.3d 580, 584–85 (10th Cir. 1995) (relying on *Hanley* in rejecting, on claim-preclusion grounds, a party's "argu[ment] that res judicata should not apply because her attorneys' negligence [had] denied her an opportunity to be heard before entry of" a prior judgment, reasoning that the party had litigated "the issue of her attorneys' negligence in her motion for relief from [the] judgment and reconsideration" and that the state trial and appellate courts had "considered and rejected this issue," precluding it from being "relitigated"); 18 Wright et al., *supra*, § 4415 ("[I]t is only in special circumstances, *in which the denial of due process could not reasonably be rectified in the first action*, that an exception should be made to claim preclusion." (emphasis added)); *cf. Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1297 (10th Cir. 2014) ("We have found a party 'cannot now complain that it did not have a full and fair opportunity to litigate the issue [when] [i]t asked the [prior] court to decide the issue in its brief, and it argued its position extensively' in the prior proceeding." (alterations in original) (quoting *Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation*,

975 F.2d 683, 690 (10th Cir. 1992)) (addressing issue preclusion)).[13]

In sum, it is clear to us that Mr. Johnson cannot escape from the claim-preclusive effect of the 1991 Action based on a procedural argument that was previously litigated and adjudicated in that action and that he had an opportunity to appeal before that judgment became final. Consequently, we reject Mr. Johnson's contention that the 1991 Action did not provide him with a "full and fair opportunity to litigate."

### ii. Cheyenne and the Estate carried their burden on the claim-preclusion defense.

Mr. Johnson also contends that, even if the 1991 Action could give rise to claim preclusion, Cheyenne and the Estate have failed to muster legally sufficient proof to establish this. We reject this argument.

Mr. Johnson argues that "even if the 1991 . . . Action[] could give rise to

---

[13]    In urging us to reject Mr. Johnson's full-and-fair-opportunity-to-litigate argument, Cheyenne relies on the view that Mr. Johnson waived it by "voluntarily participat[ing]" in the bench trial in the 1991 Action and also by failing to raise his argument on direct appeal. Aplee. Cheyenne's Resp. Br. at 28–29. The Estate and Officer Spencer make related arguments, albeit in response to Mr. Johnson's Rule 60(b)(4) argument. Officer Aplees.' Resp. Br. at 36–37. We credit that Mr. Johnson waived the argument by failing to raise it in the 1991 Action's direct appeal; as is evident, it plays a role in our analysis above. But, for purposes of reviewing the district court's determination of claim preclusion, we find more specific guidance in *Hanley* and related authorities. We, of course, may affirm on any ground supported by the record. *See, e.g.*, *Safe Sts. All. v. Hickenlooper*, 859 F.3d 865, 879 (10th Cir. 2017) ("[W]e of course 'can affirm a lower court's ruling on any grounds adequately supported by the record, even grounds not relied upon by the district court.'" (quoting *Elwell v. Byers*, 699 F.3d 1208, 1213 (10th Cir. 2012))).

claim preclusion, appellees failed to prove claim preclusion [in their Rule] 12(b)(6) motions." Aplt.'s Opening Br. at 34 (capitalization and bolding omitted). As a threshold matter, we note that much of this argument appears based on the fact that the district court relied on facts not included in the complaint, but we have already explained that the district court's judicial notice of its own records was permissible. Further, because Mr. Johnson is only challenging the district court's claim-preclusion ruling with respect to the 1991 Action on the ground that he was not given a "full and fair opportunity to litigate" his claims there, we most appropriately view his current lack-of-proof argument through that limited lens.

That said, we recognize that Mr. Johnson's argument appears to grow out of the lack of clarity in our earlier cases about whether the full-and-fair-opportunity-to-litigate factor should be classified as an "element[]" of, or an "exception" to, claim preclusion; we have clarified that it is the latter. *See MACTEC*, 427 F.3d at 831 & n.6. Mr. Johnson, however, effectively rejects this clarification and suggests that the district court did not properly allocate the burden of proof—specifically, the burden of persuasion—on Cheyenne and the Estate with respect to the fair-and-full-opportunity-to-litigate factor. *See* Aplt.'s Opening Br. at 35 (contending that "[t]here are no recognized exceptions" to claim preclusion and that the district court "failed to impose the correct 12(b)(6) burdens").

It is beyond cavil that claim preclusion is an affirmative defense, as to which

60

the defendant bears the burden of proof. *See, e.g.*, *Taylor*, 553 U.S. at 907 ("Claim preclusion, like issue preclusion, is an affirmative defense."); *Pelt v. Utah*, 539 F.3d 1271, 1283 (10th Cir. 2008) ("Generally, claim preclusion is an affirmative defense and it is incumbent upon the defendant to plead and prove such a defense."); FED. R. CIV. P. 8(c)(1) (listing "res judicata" as an affirmative defense). But at least arguably in our precedential decisions, we have effectively allocated to "the party seeking to avoid preclusion" the burden of proof as to the full-and-fair-opportunity-to-litigate exception. *See MACTEC*, 427 F.3d at 831; *see also Lenox MacLaren Surgical*, 847 F.3d at 1243–46 (holding that the plaintiff's claims were barred because the defendants had "satisfied" the "requisite elements of claim preclusion" and the plaintiff had not shown that "the full and fair opportunity exception" applied). Moreover, a panel of our court has expressly done so in an unpublished decision. *See Sullivan v. DaVita Healthcare Partners, Inc.*, 780 F. App'x 612, 615 (10th Cir. 2019) (unpublished) (expressly rejecting the contention that the defendant "had the burden to plead and prove" the full-and-fair-opportunity-to-litigate factor). Be that as it may, we need not definitively opine here on this burden-of-proof question because the district court, in fact, placed the burden of proof for the full-and-fair-opportunity factor—including the burden of persuasion—*on the defendants*. *See* Aplt.'s App., Vol. III, at 664 (Order Den. Pl.'s Rule 59(e) Mot., filed Nov. 21, 2017) (concluding that the defendants had

61

"satisfactorily established the elements and factors for application of *res judicata* . . . , including a full and fair opportunity to litigate, which [Mr. Johnson] failed to rebut" (footnote omitted)). Insofar as Mr. Johnson suggests that the court's observation that he "failed to rebut" the defendants' proof demonstrates that the court actually placed the burden of proof on him, *see* Aplt.'s Opening Br. at 35 (quoting that language), we disagree. Instead of treating the full-and-fair-opportunity factor as an exception to preclusion, the district court viewed it as one of "'four' *res judicata* elements" that the defendants had "the burden of showing." Aplt.'s App., Vol. III, at 663. The court, therefore, made its observation that Mr. Johnson did not rebut the defendants' proof in the context of its express statement that it had held the defendants to "the burden of showing . . . that [Mr. Johnson] had a full and fair opportunity to litigate the claims in the prior suits." *Id.* at 663–64. Accordingly, Mr. Johnson has no basis to object to the district court's allocation of the burden of proof as to the full-and-fair-opportunity-to-litigate factor because the court allocated the burden as he desired.

Lastly, Mr. Johnson fails to support his argument that the district court erred "by applying a preponderance-of-evidence burden of persuasion standard[,] rather than the correct beyond-reasonable-doubt standard[,]" with any citation to Tenth Circuit authority in the Rule 12(b)(6) context. *See* Aplt.'s Opening Br. at 35–37. His out-of-circuit cases, moreover, do not support his argument, either. At best,

they evince a not uncommon "policy of resolving doubts against an assertion of claim preclusion," 18 Wright, *supra*, § 4406 n.19; *see ITOFCA, Inc. v. MegaTrans Logistics, Inc.*, 322 F.3d 928, 933 (7th Cir. 2003) (Ripple, J., concurring) (noting the purported view of "many courts" that "doubts are resolved against preclusion" (quoting *In re Associated Vintage Grp., Inc.*, 283 B.R. 549, 562 (B.A.P. 9th Cir. 2002))), and a hesitance to find the requirements of claim preclusion satisfied in the 12(b)(6) context unless "the facts are admitted or are not controverted or are conclusively established so that nothing further can be developed by a trial of the issue," *Larter & Sons, Inc. v. Dinkler Hotels Co.*, 199 F.2d 854, 855 (5th Cir. 1952); *see SBT Holdings, LLC v. Town of Westminster*, 547 F.3d 28, 36 (1st Cir. 2008). To persuade us that a heightened burden of proof applies here, on-point authority in the Rule 12(b)(6) context would be especially important (if not necessary) given that "[t]he normal burden of persuasion in a civil case requires only that [the] party prove the fact by a 'preponderance of the evidence.'" 21B Wright et al., *supra*, § 5122; *see Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008) (noting "the usual civil law standard of preponderance of the evidence"). Mr. Johnson has provided us with none. Therefore, we cannot accept his beyond-a-reasonable-doubt argument.

In sum, we reject Mr. Johnson's argument that Cheyenne and the Estate have failed to muster legally sufficient proof to establish claim preclusion as to the 1991

Action.

### iii.    *Heck v. Humphrey* **Redux**

Mr. Johnson also returns to an iteration of his *Heck* argument.  He argues that, under *Heck*, he could not have brought the claims in his 2017 Action until he was exonerated in 2013 and so the district court erred in deeming those claims precluded by his earlier actions.  Aplt.'s Opening Br. at 28–30.  Like his earlier argument—that *Heck* invalidated the judgments entered in the 1991 and 1992 Actions—this invocation of *Heck* also fails.

Mr. Johnson's argument starts with *Heck*'s teaching that, to determine whether a prisoner's conviction has prevented his § 1983 claim pertaining to that conviction from accruing, courts "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence."  512 U.S. at 487.  "[I]f it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."  *Id.* Mr. Johnson adds to those principles from *Heck* our statement in *Lenox MacLaren Surgical* that "claim preclusion does not bar subsequent litigation of new claims based on facts the plaintiff did not and could not know when it filed its complaint." 847 F.3d at 1244.  Combining *Heck* and *Lenox MacLaren Surgical*, Mr. Johnson reasons that "[s]ince invalidation of [his] conviction[] was a non-existent fact at the time of [his] prior actions, he could not have brought his present claims in [those]

prior actions." Aplt.'s Opening Br. at 29. He, in other words, argues that his claims did not begin accruing until he was exonerated. *Id.*

But this argument runs into similar problems as those discussed above. Regardless of whether the district court in the 1991 Action should have held—even before *Heck* was decided—that Mr. Johnson's claims were not cognizable under § 1983, the 1991 Action nonetheless adjudicated Mr. Johnson's claims against Detective Stanford and Cheyenne. Following his appeal, the judgment in that case became final, and that final judgment will have claim-preclusive effect on the 2017 Action if the elements of preclusion are met. Because Mr. Johnson concedes that the district court correctly ruled that the second and third elements of claim preclusion are satisfied here, *see* Aplt.'s Reply Br. at 7 n.2 (declining to "dispute that the same parties and transaction elements are satisfied"), the 1991 Action will have claim-preclusive effect so long as it was "on the merits" and provided a "full and fair opportunity to litigate." *Lenox MacLaren Surgical*, 847 F.3d at 1239. But Mr. Johnson does not argue that the district court erred in concluding that the 1991 Action was "on the merits," and we have already rejected his argument that the action did not provide a "full and fair opportunity to litigate." And so the judgment in the 1991 Action has precluded claims like those in the 2017 Action from the time it became final.

The Supreme Court's later opinion in *Heck* did nothing to disturb the parties'

65

reliance on that final judgment: "once suit is barred by res judicata or by statutes of limitation or repose, a new rule cannot reopen the door already closed." *James B. Beam Distilling*, 501 U.S. at 541 (plurality opinion of Souter, J.); *see Moitie*, 452 U.S. at 401 ("[P]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." (quoting *Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525 (1931))); *accord United States ex rel. Garibaldi v. Orleans Par. Sch. Bd.*, 397 F.3d 334, 339 n.27 (5th Cir. 2005) ("Generally speaking, final civil judgments having the effect of res judicata . . . are not voided or affected by a subsequent change in the decisional law on which they were based." (citing *James B. Beam Distilling*, 501 U.S. at 541)).

We, thus, reject Mr. Johnson's argument that the claims in the 2017 Action were not precluded by the 1991 Action because they were not cognizable under § 1983 until after he was exonerated.

### iv.    The District Court's Ruling on the Estate's Rule 12(b)(6) Motion before Briefing Had Closed

Finally, Mr. Johnson argues that the district court erred by granting the Estate's Rule 12(b)(6) motion to dismiss before his time to respond to it had elapsed. The Estate filed its Rule 12(b)(6) motion on July 21, 2017—more than two months after the other defendants. The district court then granted the Estate's

motion on July 27, 2017—at the same time that it granted the other defendants'

motions to dismiss—even though Mr. Johnson had not yet responded to it.  The

local rules gave Mr. Johnson fourteen days to respond to the motion, but also stated

that the district court could rule on the motion at any time.  *See* D. Wyo. Civ. R.

7.1(a) (2017) ("Nothing in this rule precludes the Court from ruling on a motion at

any time after it is filed."); *id.* R. 7.1(b)(2)(A) (providing parties with 14 days for a

motion response).  In ruling on the Estate's motion, the district court explained that

it "f[ound] it appropriate to rule on the Estate's motion despite Plaintiff not having

an opportunity to respond because the res judicata analysis d[id] not differ [from

the analysis applicable to Cheyenne] and [wa]s equally dispositive as to Detective

Stanford."  Aplt.'s App., Vol. II, at 365 n.13 (Order Granting Mots. to Dismiss,

filed July 27, 2017).

Mr. Johnson argues this was reversible error, but we disagree.  "[A]lthough

we disfavor . . . dismissals before the losing party has an opportunity to respond,

this court has held that such a 'dismissal under Rule 12(b)(6) is not reversible error

when it is patently obvious that the plaintiff could not prevail on the facts alleged

and allowing [her] an opportunity to amend [her] complaint would be futile.'"

*Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014)

(alterations in original) (quoting *McKinney v. Okla. Dep't of Human Servs.*, 925

F.2d 363, 365 (10th Cir. 1991)); *see id.* (rejecting the argument "that the dismissal

decision was premature because the district court granted defendants' motion to dismiss before [the plaintiff's] deadline to file a motion to remand to state court and before her response period expired").  Such a dismissal does not violate due process because "[a] litigant whose complaint has been dismissed with prejudice could file a motion to alter or amend the judgment under Rule 59(e) or for relief from the judgment under Rule 60(b)," and "can also bring an appeal."  *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001).

As the district court explained, the claim-preclusion defense applicable to Cheyenne applied equally to the Estate.  And the court had already received Mr. Johnson's briefing challenging that defense in his response to Cheyenne's motion to dismiss.  *See* Aplt.'s App., Vol. II, at 300–03 (Pl.'s Suppl. Br. in Opp'n to Defs.' Mots. to Dismiss, filed July 7, 2017) (arguing that the judgment dismissing the 1991 Action is void).  Accordingly, based on the district court's rejection of Mr. Johnson's arguments against Cheyenne's motion to dismiss based on claim preclusion, the court effectively determined that "it [wa]s patently obvious that [Mr. Johnson] could not prevail on the facts alleged" in his complaint concerning the Estate, either.  *Knight*, 749 F.3d at 1190 (quoting *McKinney*, 925 F.2d at 365).  Furthermore, guided by *Knight*'s rubric, we conclude that the district court did not commit reversible error because "allowing [Mr. Johnson] an opportunity to amend [his] complaint would [have] be[en] futile."  *Id.*

68

The district court expressly addressed the substance of the futility issue when it subsequently denied Mr. Johnson Rule 59 relief. The court concluded that amendment was futile because Mr. Johnson "could not have alleged any facts" that would fix his claim-preclusion problem. Aplt.'s App., Vol. III, at 658. We deem this ruling correct and sound. Indeed, Mr. Johnson has still not explained how any amendment to his 2017 complaint could cure the fact that the judgment in the 1991 Action precluded his claims against the Estate. *See Knight*, 749 F.3d at 1190–91 (holding that "any further opportunity to amend would be futile because [plaintiff's] claims would still be barred" by issue preclusion); *cf. Hawg Tools, LLC v. Newsco Int'l Energy Servs., Inc.*, 758 F. App'x 632, 638 (10th Cir. 2018) (unpublished) ("We agree with the district court's ruling that claim preclusion made further consideration of Hawg's conversion claim futile."). Thus, even if Mr. Johnson had been permitted to raise what he claims would have been "important arguments" against the Estate's motion to dismiss, Aplt.'s Opening Br. at 41, the district court would have properly rejected them on claim-preclusion grounds based on the factual averments of his complaint. And even if he had properly sought at that time to amend his complaint, that effort would have been futile.

In arguing for a contrary result, Mr. Johnson points us to *Cooper v. United States Penitentiary*, 433 F.2d 596 (10th Cir. 1970) (per curiam), but that case is distinguishable. There, the district court "erred in accepting, as fact, the ex parte

69

statement of the United States concerning plaintiff's non-compliance with [an administrative exhaustion requirement] and in not allowing plaintiff an opportunity to meet both the asserted deficiency in pleading and the assumption and contention that his claim was intended to be, and was capable only of being, cognizable under the Tort Claims Act." *Id.* at 597. *Cooper* reasoned that "[t]he court cannot know, without hearing the parties, whether it may be possible for [plaintiff] to state a claim entitling him to relief, however strongly it may incline to the belief that he cannot." *Id.* (quoting *Harmon v. Superior Court*, 307 F.2d 796, 798 (9th Cir. 1962)). *Cooper*, however, is distinguishable. As noted, the district court did hear from Mr. Johnson when it considered his arguments challenging Cheyenne's claim-preclusion defense—which was in all material respects the same as the Estate's claim-preclusion defense—and the court properly rejected those arguments. And, though *Cooper* appears to have allowed for the possibility that the plaintiff could cure "the asserted deficiency in pleading," *id.*, here we agree with the district court that any effort by Mr. Johnson to amend his complaint would have been futile. Aplt.'s App., Vol. III, at 658 ("The Court finds Plaintiff could not have alleged any facts to 'plead around' *res judicata*; so, it was within the Court's discretion to dismiss the complaint without leave to amend."). Accordingly, Mr. Johnson's reliance on *Cooper* is misplaced.

***

In sum, we hold that the claims in the 2017 Action against Cheyenne and the Estate are precluded by the 1991 Action. We, thus, affirm the dismissal of those claims.

**b.    The 1992 Action is not entitled to claim-preclusive effect**.

With respect to the 1992 Action, Mr. Johnson primarily disputes the first element of claim preclusion, i.e., whether there was "a [final] judgment on the merits." *Lenox MacLaren Surgical*, 847 F.3d at 1239 (alteration in original) (quoting *King*, 117 F.3d at 445). We recount the relevant procedural history before agreeing with Mr. Johnson that the 1992 Action was not adjudicated "on the merits" and, therefore, did not have claim-preclusive effect on the 2017 Action. We, thus, reverse the district court's dismissal of the claims against Officer Spencer—the only defendant in the 1992 Action—and remand for further proceedings on those claims. Because we conclude that the 1992 Action was not adjudicated "on the merits," we need not entertain Mr. Johnson's separate argument that the 1992 Action did not afford him a "full and fair opportunity to litigate."

**i.    Relevant Procedural History**

Mr. Johnson's 1992 Action was a § 1983 suit alleging that Officer Spencer violated his due-process rights by providing false testimony about his eyeglasses at his criminal trial. The district court dismissed the complaint sua sponte with prejudice as frivolous, (1) noting that in the 1991 Action it had "concluded there

71

were no facts justifying the plaintiff's claims that his constitutional rights were violated" and (2) holding that "[t]he present complaint [wa]s simply another attempt by plaintiff to revisit the same claim that has previously been dismissed." Aplt.'s App., Vol. VI, at 1257–58. The court reviewed the exhibits that Mr. Johnson had submitted with his complaint and concluded that they did not "establish[] even the slightest indication that [Officer Spencer] made false, or inconsistent statements at the trial." *Id.* at 1258. The court, in conclusion, observed that Mr. Johnson had "made no new argument in his complaint" and, thus, held that his complaint was "frivolous and completely devoid of merit." *Id.* (citing 28 U.S.C. § 1915(d) (1993)).[14]

Further, the district court stated that "[e]ven assuming [Mr. Johnson's] constitutional rights were violated by [Officer Spencer], . . . it was harmless error." *Id.* The court held in particular that "no reasonable possibility existed to believe the evidence of [Mr. Johnson's] eyeglasses . . . might have contributed to his conviction" because there was other evidence—*viz.*, the acquaintance's

---

[14] The then-existing version of the *in forma pauperis* statute provided in relevant part that a district court "may dismiss the case . . . if satisfied that the action is frivolous or malicious." 28 U.S.C. § 1915(d) (1993). In 1996, "[s]ubsection (d) was changed to (e)," *Buchheit v. Green*, 705 F.3d 1157, 1160 (10th Cir. 2012), which now provides that the court "*shall*" dismiss the action at any time if it determines that it "is frivolous or malicious," *id.* (quoting 28 U.S.C. § 1915(e)(2)(B)); *see Whitney v. New Mexico*, 113 F.3d 1170, 1172 n.3 (10th Cir. 1997) ("The provisions of 28 U.S.C. § 1915(d) have been recodified at 28 U.S.C. § 1915(e).").

72

identification of him, the presence of his driver's license and picture I.D. in her apartment, and the forensic evidence tying him to the seminal fluid preserved in the acquaintance's sexual-assault kit—that had established Mr. Johnson's guilt. *Id.* at 1259. The court, thus, concluded that Officer Spencer's trial testimony about Mr. Johnson's eyeglasses "was[,] at best, extraneous and cumulative." *Id.* The court then "dismissed [the complaint] with prejudice as frivolous," noting that Mr. Johnson had filed several related lawsuits, "all of which [we]re frivolous and vexatious in nature." *Id.* The court subsequently underscored the basis for its action, after noting that it had "come to the attention of the court" that Mr. Johnson's *in forma pauperis* motion was still pending. *Id.* at 1260. The court noted that it had recently determined that Mr. Johnson "ha[d] failed to present a rational argument on the facts or law in support of his clam . . . and that the complaint [wa]s frivolous and devoid of merit." *Id.* (citing § 1915(d) (1993)). "Therefore," the court denied Mr. Johnson's *in forma pauperis* motion. *Id.*

On appeal from that judgment, we noted that the district court "dismiss[ed] the action as factually frivolous" and affirmed on the ground that "Mr. Johnson's lawsuit is based upon an indisputably meritless legal theory because a testifying police officer is entitled to absolute immunity." *Johnson II*, 1994 WL 249805, at *1 (citation omitted).

73

## ii.    The "On the Merits" Requirement

As mentioned, a successful claim-preclusion defense requires "a [final] judgment *on the merits* in [the] earlier action." *Lenox MacLaren Surgical*, 847 F.3d at 1239 (first alteration in original) (emphasis added) (quoting *King*, 117 F.3d at 445); *accord Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("[A] final judgment *on the merits* of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." (emphasis added)).  Mr. Johnson argues that the 1992 Action was not an adjudication "on the merits" because the suit was dismissed as frivolous.  We agree.

The Supreme Court settled this question in *Denton v. Hernandez*, 504 U.S. 25 (1992).  There, the Court addressed "the appropriate inquiry for determining when an *in forma pauperis* litigant's factual allegations justify a § 1915(d) dismissal for frivolousness." *Id.* at 27.  In doing so, the Court stated that "[b]*ecause a § 1915(d) dismissal is not a dismissal on the merits*, but rather an exercise of the court's discretion under the *in forma pauperis* statute, *the dismissal does not prejudice the filing of a paid complaint making the same allegations.*" *Id.* at 34 (first and last emphases added); *see Shabazz v. Askins*, 980 F.2d 1333, 1334 (10th Cir. 1992) ("Although a district court can review the factual allegations to determine whether they are clearly baseless, the court cannot address the merits of a claim in dismissing it under § 1915(d) as frivolous."); *cf. Cedrins v. USCIS*, 383

F. App'x 811, 812 (10th Cir. 2010) (unpublished) (observing that we "do not reach

the merits of the appeal" when we dismiss it as frivolous under the now mandatory

provision set forth in § 1915(e)(2)(B)(i)).

In the 1992 Action, the district court expressly relied on the then-existing

§ 1915(d) in dismissing Mr. Johnson's claim as "frivolous and completely devoid

of merit." Aplt.'s App., Vol. VI, at 1258 (citing 28 U.S.C. § 1915(d) (1993)). And

so, following *Denton*, we conclude that the district court's dismissal of the 1992

Action was not "on the merits." *See* 504 U.S. at 34.[15]

Officer Spencer argues against this straightforward conclusion. He first

contends that while it is "[g]enerally" true that a § 1915(d) dismissal is not "on the

merits" when it is for *factual* frivolousness, the dismissal here should be deemed

---

[15]      We recognize that the district court purported to dismiss the 1992 Action
"*with* prejudice." Aplt.'s App., Vol. VI, at 1259 (emphasis added). And such a dismissal
certainly may bespeak in certain settings a ruling on the merits. *See, e.g.*, 9 Wright et al.,
*supra*, § 2373 ("[B]ecause an involuntary dismissal is an adjudication on the merits, it is,
in the phrase commonly used by the federal courts, 'with prejudice.'"); *cf. Brereton v.
Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) ("[D]ismissals for lack of
jurisdiction should be without prejudice because the court, having determined that it lacks
jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the
underlying claims."). However, when given an opportunity to revisit its dismissal when
ruling on Mr. Johnson's motion to proceed *in forma pauperis*, the district court explicitly
cited  § 1915(d) and opined that Mr. Johnson's "complaint [wa]s frivolous and devoid of
merit." Aplt.'s App., Vol. VI, at 1260. And *Denton* specifically recognizes that—even
when it is *with* prejudice—such a dismissal "does not prejudice the filing of a paid
complaint making the same allegations" because it does not constitute "a dismissal on the
merits, but rather an exercise of the court's discretion under the *in forma pauperis*
statute." 504 U.S. at 34. Such a dismissal "could, however, have a res judicata effect on
frivolousness determinations for future *in forma pauperis* petitions." *Id.*

75

"on the merits" for claim-preclusion purposes because the district court additionally determined that Mr. Johnson's claims were not *legally* meritorious because any error was harmless. Officer Aplees.' Resp. Br. at 17–20. We reject this argument. The old § 1915(d) allowed district courts to dismiss a complaint as frivolous when it "lack[ed] an arguable basis either in law or in fact." *Neitzke*, 490 U.S. at 325. Although the Court in *Denton* emphasized that § 1915(d) provided courts with "the unusual power to pierce the veil of the complaint's factual allegations," *Denton*, 504 U.S. at 32 (quoting *Neitzke*, 490 U.S. at 327), thereby deviating from the Rule 12(b)(6) standard of largely "accept[ing] without question the truth of the plaintiff's allegations," the Court ultimately drew no distinction between § 1915(d) dismissals for legal frivolity and those for factual frivolity when it stated that "a § 1915(d) dismissal is not a dismissal on the merits." *Id.* at 32, 34. While *Denton* itself specifically addressed a factually frivolous complaint, its rule that § 1915(d) dismissals are not on the merits contemplated § 1915(d) dismissals generally, i.e., dismissals based on *both* legal and factual frivolity. *Cf. Brown v. Briscoe*, 998 F.2d 201, 204 (4th Cir. 1993) (per curiam) (reiterating, in the context of a district court's dismissal of a *legally* frivolous claim, *Denton*'s rule that "the dismissal *sua sponte* under the *in forma pauperis* statute is without prejudice to the plaintiff filing a suit paying the full filing costs and service fees").

Denton created a simple rule applying to all dismissals for frivolousness

under the pre-1996 § 1915(d), regardless of whether the frivolousness was legal or factual, and we apply that rule here. The district court explicitly based its dismissal on § 1915(d). Although the court appended to the end of its order a one-paragraph discussion of the harmlessness of any purported error, that discussion did not transform the dismissal into a merits adjudication. Because the 1992 Action was not adjudicated on the merits, it has no preclusive effect on Mr. Johnson's paid complaint in the 2017 Action.

Officer Spencer also cites *Bell v. Hood*, 327 U.S. 678, 682 (1946), for the proposition that if a court "exercise[s] its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction." *See* Officer Aplees.' Resp. Br. at 18, 20. But that general proposition in *Bell* does *not* address whether frivolousness determinations are on the merits, as the very next sentence makes clear. *See Bell*, 327 U.S. at 682 (indicating that one of the "exceptions" to that proposition is "that a suit may sometimes be dismissed for want of jurisdiction where the alleged claim . . . is wholly insubstantial and frivolous"). Therefore, we conclude that this proposition in *Bell* does nothing to limit the breadth of *Denton*'s relevant pronouncement.

Relatedly, Officer Spencer relies on the Ninth Circuit's statement that "a dismissal for failure to state a claim under Rule 12(b)(6) is a 'judgment on the

merits' to which res judicata applies." *Stewart v. U.S. Bancorp*, 297 F.3d 953, 957

(9th Cir. 2002).  But that uncontroversial statement simply has no application here.

The district court did not sua sponte dismiss the claim at issue here pursuant to

Rule 12(b)(6); it expressly invoked § 1915(d).  *See Shabazz*, 980 F.2d at 1335

(noting that Rule 12(b)(6) "requires application of a different standard than

§ 1915(d)"); *see also Cochran v. Morris*, 73 F.3d 1310, 1315 (4th Cir. 1996) (en

banc) ("[T]he *sua sponte* nature of the court's dismissal was consistent with a

ruling under § 1915(d) rather than Rule 12(b)(6), since *sua sponte* dismissals are

freely permitted under the former provision.").  *Stewart*'s discussion of Rule

12(b)(6) therefore has nothing to contribute to *Denton*'s interpretation of § 1915(d).

Finally, the parties dispute whether an order with two holdings, one "on the

merits" and one not, can have claim-preclusive effect.  But we need not wade into

this dispute.[16]  Notwithstanding the district court's discussion of harmlessness, its

---

[16]     Some courts have held that "[w]hen a district court's ruling rests on alternative grounds, at least one of which is based on the inability of the court to reach the merits, the judgment should not act as a bar in a future action." *Remus Joint Venture v. McAnally*, 116 F.3d 180, 184 n.5 (6th Cir. 1997); *accord Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116, 119 (4th Cir. 1989) ("Had the district court dismissed [a suit] on alternative grounds, one procedural and one substantive, res judicata would not prevent the litigating of [a later suit]."); *see also* Restatement (Second) of Judgments § 20 cmt. e (AM. LAW INST. 1982), Westlaw (database updated Oct. 2019) ("A dismissal may be based on two or more determinations, at least one of which, standing alone, would not render the judgment a bar to another action on the same claim.  In such a case, if the judgment is one rendered by a court of first instance, it should not operate as a bar.").  We note, however, that a recent dissenting

judgment in the 1992 Action was expressly and solely bottomed on a dismissal under § 1915(d) (1993).  The court did not purport to rule on the merits, but instead dismissed under § 1915(d) on frivolousness grounds.  And *Denton* settles the question that such dismissals are not on the merits.  *See* 504 U.S. at 34; *see also United States v. Nixon*, 919 F.3d 1265, 1273 (10th Cir. 2019) (observing that we consider ourselves bound by Supreme Court dicta almost as firmly as by its holdings).  This is not a case where the district court made two holdings—one on the merits and one not—and so the claim-preclusive effects of such a circumstance are not before us.

In sum, because it was not an adjudication on the merits, we conclude that the 1992 Action cannot operate with claim-preclusive effect on the 2017 Action.  We, thus, reverse the district court's order dismissing the 2017 Action's claims against Officer Spencer.  Because we reverse that order based on the "on the merits" element of claim preclusion, we need not and do not address whether the district court's order was also erroneous because it determined that the 1992 Action provided Mr. Johnson with a "full and fair opportunity to litigate."

### 4.    Leave to Amend

---

opinion joined by four Members of the Supreme Court criticized the Second Restatement's adoption of a related rule in the issue-preclusion context. *See Herrera v. Wyoming*, ___ U.S. ___, 139 S. Ct. 1686, 1710–11 (2019) (Alito, J., dissenting) (criticizing Restatement (Second) of Judgments § 27 cmt. i).  As noted, we have no occasion to opine on this matter.

Mr. Johnson argues that the district court erred because it did not grant him leave to amend. Because we are reversing the dismissal of the claims against Officer Spencer, we address only whether the district court should have given Mr. Johnson leave to amend the claims against the Estate and Cheyenne. Although the district court justified its denial of leave to amend on other bases, we may affirm on any ground supported by the record, *see, e.g.*, *Knight*, 749 F.3d at 1186, and we reject this contention of error in straightforward fashion on the ground that Mr. Johnson never properly moved for leave to amend.[17]

"[W]e generally review for abuse of discretion a district court's denial of leave to amend a complaint," but "when [a] denial is based on a determination that amendment would be futile, our review for abuse of discretion includes de novo review of the legal basis for the finding of futility." *United States ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 740 (10th Cir. 2018) (internal quotation marks omitted) (quoting *Cohen v. Longshore*, 621 F.3d 1311, 1314 (10th Cir. 2010)).

A district court may deny leave to amend when "a plaintiff fails to file a

---

[17] As we discussed *supra*, in upholding the district court's decision to dismiss Mr. Johnson's complaint against the Estate without permitting him to respond to the Estate's motion to dismiss, any attempt by Mr. Johnson to amend his complaint's averments against the Estate would have been futile. This itself would have provided a substantive basis for the district court to deny Mr. Johnson leave to amend his claims against the Estate—if he had properly moved to amend. But, as explicated *infra*, he did not do so. And, in light of the straightforward disposition that we craft related to this failure, we need not opine further on this or other alternative justifications supportive of the district court's denial of leave to amend.

written motion and instead 'merely suggest[s] she should be allowed to amend if the court conclude[s] her pleadings [a]re infirm.'" *Warnick v. Cooley*, 895 F.3d 746, 755 (10th Cir. 2018) (alterations in original) (quoting *Garman v. Campbell Cty. Sch. Dist. No. 1*, 630 F.3d 977, 986 (10th Cir. 2010)); *accord Albers v. Bd. of Cty. Comm'rs*, 771 F.3d 697, 706 (10th Cir. 2014) ("[N]ormally a court need not grant leave to amend when a party fails to file a formal motion." (quoting *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999))). And we have repeatedly held that "a bare request to amend in response to a motion to dismiss is insufficient to place the court and opposing parties on notice of the plaintiff's request to amend and the particular grounds upon which such a request would be based." *Albers*, 771 F.3d at 706; *see Glenn v. First Nat'l Bank*, 868 F.2d 368, 371 (10th Cir. 1989) ("[W]e hold that Appellant did not move the court for leave to amend the complaint and therefore the district judge committed no error in not ruling thereon. A naked request for leave to amend asked for as alternative relief when a party has the unexercised right to amend is not sufficient.").

Mr. Johnson's responses to the defendants' motions to dismiss concluded by stating the following: "If the Court disagrees [with his arguments against dismissal], Plaintiff respectfully hereby requests leave to file and serve a First Amended Complaint curing the pleading deficiencies the Court sees." Aplt.'s App., Vol. I, at 254 (Pl.'s Memo. in Opp'n to Def. Spencer's Mot. to Dismiss, filed

81

June 9, 2017); *accord id.* at 270 (Pl.'s Mem. in Opp'n to Def. Cheyenne's Mot. to Dismiss, filed June 9, 2017). Mr. Johnson's brief in support of his Rule 59(e) motion stated that he "has now filed and served pleadings presenting facts and arguments that collectively make a good faith showing that [he] can plead around all three defendants' *res judicata*/claim preclusion defenses." *Id.*, Vol. II, at 503 (Mem. in Supp. of Rule 59(e) Mot., filed Aug. 24, 2017). He did not cite any specific filings, however. And the docket for the 2017 Action shows that he never moved for leave to file an amended complaint, nor did he file an amended complaint. *See* Oral Arg. at 13:59–14:03 (Judge: "When did you proffer your amended complaint?" Counsel: "We did not.").

It is well-settled under our cases that these drive-by requests to amend the complaint do "not rise to the status of a motion." *Glenn*, 868 F.2d at 370; *accord Albers*, 771 F.3d at 706. They did not provide the district court with any specific allegations that it could weigh against the flaws that it had found in Mr. Johnson's complaint. As such, "the district judge was not obliged to consider the matter, [and, thus,] he committed no error." *Glenn*, 868 F.2d at 370; *accord Warnick*, 895 F.3d at 755. Accordingly, we conclude that Mr. Johnson's failure to move for leave to amend his 2017 complaint undermines this claim of error.

\* \* \*

In sum, we affirm the district court's dismissal of the 2017 Action's claims

as precluded by the 1991 Action—i.e., those against the Estate and Cheyenne—but reverse the district court's dismissal of the 2017 Action's claims as precluded by the 1992 Action—i.e., those against Officer Spencer.

## C. Motion to Supplement the Record

Finally, after filing his notice of appeal, Mr. Johnson filed a letter in this court requesting procedural assistance in assembling his appendix. Our clerk's office interpreted this letter as a motion to supplement the record. To the extent the letter sought to supplement the record, we deny that motion as moot because the district court already issued an order allowing Mr. Johnson to include the relevant materials in the record.

We agree with Mr. Johnson that our starting point is the district court's order allowing him to include the additional documents and transcripts from the 1991 and 1992 Actions in the record. Federal Rule of Appellate Procedure 10(e) allows district courts to supplement the record in certain circumstances. *See, e.g.*, *United States v. Kelly*, 535 F.3d 1229, 1241 n.10 (10th Cir. 2008). That rule provides, as relevant, that "[i]f anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified and forwarded . . . by the district court before or after the record has been forwarded." FED. R. APP. P. 10(e)(2)(B).

After filing his notices of appeal, Mr. Johnson filed a notice in the district

court setting forth the materials that the clerk of court should forward to us as the record on appeal. The defendants objected to some of the materials on the ground that the district court did not consider them in making its challenged rulings. The district court agreed that Mr. Johnson had included in his notice "various documents and transcripts" from his 1991 and 1992 Actions that were located at the Federal Records Center and the National Archives and, thus, "were not presented to or considered by [the court] in making its rulings." Aplt.'s App., Vol. VII, at 1395. The district court nonetheless held that those records "may properly be included in the record on appeal," overruling the defendants' objections. *Id.* We construe this as an order under Federal Rule of Appellate Procedure 10(e)(2)(B).

Mr. Johnson then filed a letter in this court seeking advice on how to include the archived records from the 1991 and 1992 Actions in his appendix. The clerk's office construed his letter as "a motion to supplement the record on appeal with material which was not before the district court" and ordered appellees to respond to the motion. Order No. 10529878 at 2 (10th Cir. Jan. 19, 2018). Despite the district court's order that the records "may properly be included in the record on appeal," Aplt.'s App., Vol. VII, at 1395, the Estate, Officer Spencer, and Cheyenne all opposed the motion, arguing that *this* Court should "limit[] the record on appeal to only those materials before the District Court when it made its decision." *Id.* at 1406 (Individual Defs.' Resp. to Appellant's Mot. to Suppl. the R. on Appeal, filed

Jan. 29, 2018); *see also id.* at 1400 (Cheyenne's Opp'n to Appellant's Mot. to Suppl. the R. on Appeal, filed Jan. 29, 2018) (same).

Mr. Johnson filed a reply wherein he reiterated that the district court had already allowed him to include the archived records from the 1991 and 1992 Actions in his appendix. A motions panel and the clerk's office collectively referred the original letter, the responses, and the reply to the merits (i.e., our) panel for decision. Additionally, subject to this decision, our clerk's office directed Mr. Johnson to "include these materials in his appendix." *Id.* at 1417 (Order, filed Feb. 8, 2018).

While Cheyenne, Officer Spencer, and the Estate have made various arguments—in response to Mr. Johnson's letter—about why it was error for the district court to have granted this motion, the fundamental problem is that they did not cross-appeal the district court's order. *See Greenlaw v. United States*, 554 U.S. 237, 244–45 (2008) ("This Court, from its earliest years, has recognized that it takes a cross-appeal to justify a remedy in favor of an appellee."); 15A Wright et al., *supra*, § 3904 ("[T]he appellee may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below." (quoting *United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435 (1924))); *Martinez v. Carson*, 697 F.3d 1252, 1259 (10th

85

Cir. 2012) ("Because Defendants failed to file a notice of appeal within thirty days following the dismissal of their first post-judgment motion, we must dismiss the cross-appeal for lack of jurisdiction."); *cf. Allen v. Minnstar, Inc.*, 8 F.3d 1470, 1473 (10th Cir. 1993) ("As noted, Allen separately appeals the district court's denial of his motion to supplement the record . . . ."); *Duha v. Agrium, Inc.*, 448 F.3d 867, 881 (6th Cir. 2006) ("Agrium has filed a cross-appeal, seeking reversal of the district court's denial of Agrium's motion to supplement the record with Agrium's proffered materials."). We, thus, lack jurisdiction to afford the defendants any relief based on their arguments—raised only in response to Mr. Johnson's letter to our clerk's office—that the district court erred in ordering that he may supplement the record with the archived materials.

Because the district court authorized Mr. Johnson to include those documents in the record on appeal, we deny as moot his separate request to *this* court to add those same records to his appendix. *See United States v. Kutz*, 702 F. App'x 661, 665 (10th Cir. 2017) (unpublished) ("[T]he Government's Motion to Supplement is moot with respect to the Plea Agreement, which is already part of the record.").

## III. CONCLUSION

We acknowledge the terrible reality that Mr. Johnson must have faced during the twenty-four years that he was wrongly incarcerated. As the Supreme Court has stated, however, the doctrine of claim preclusion "serves vital public interests

86

beyond any individual judge's ad hoc determination of the equities in a particular case." *Moitie*, 452 U.S. at 401. Thus, for the reasons we have provided, in the 2017 Action, Case No. 17-8091, we **affirm** the dismissal of the claims against the Estate and Cheyenne, but **reverse** the dismissal of the claims against Officer Spencer and **remand** for further proceedings consistent with this opinion. In both the 1991 and 1992 Actions, Case Nos. 17-8089 and 17-8090, we **vacate** only the district court's order denying Rule 60(b)(6) relief and **remand** for proceedings consistent with this opinion. We **deny** as moot Mr. Johnson's pending motion to supplement the record.[18]

---

[18] We also **grant** Rocky Mountain Innocence Center's motions for leave to file an amicus brief.